#### [CONTINUED FROM VOL. XLIII.]

44    13
34a 390

44    13
46a 177

44    13
69a 483

44    13
77a 498

THE BANK OF COMMERCE, Appellant, *v.* LOUIS V. BOGY, Respondent.

1. *Bill of exchange — Equity — Debt, assignment of — Evidence.—* A bill of exchange drawn by a creditor upon his debtor does not of itself operate as an assignment in equity of the debt, even where negotiated for a good consideration—although it is evidence tending to show such assignment, and, with other circumstances to show that such was the intention of the drawers, will vest in the holder an exclusive claim to the indebtedness.

2. *Bill of exchange — Equity — Debt, assignment of — Intention of parties.—* Anything that shows an intention on the one side to make a present irrevocable transfer of the debt or fund, and from which an assent to receive it may be inferred on the other, will operate in equity as an assignment, if supported by a sufficient consideration; and when the money is in the hands of the drawee, and the order is given for the exact amount, and a full consideration has been received for it — especially if advanced at the time, with no circumstances indicating any remaining interest in the drawer — the order should be treated as evidence of an equitable assignment.

2—VOL. XLIV.

*Appeal from St. Louis Circuit Court.*

The facts material to the case are set forth in the opinion of the court.

*Garesche & Mead,* for appellant.

I. The draft operated as an equitable assignment of the fund, because it was drawn against a particular fund, viz: assessments on capital stock. It directed payment of the fund to be made to plaintiff, and the payment was not dependent on any contingency. There was no reservation, on the part of the drawee, of any power or authority over the fund. It was drawn for all of the fund. In cases where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund, and, after notice to the drawee, it binds the fund in his hands. (Mandeville v. Welch, 5 Wheat. 289 ; Blinn v. Pierce, 20 Wend. 29 ; Walker v. Mauro, 18 Mo. 569 ; Dana v. San Francisco, 19 Cal. 490 ; Wheatly v. Strobc, 19 Cal. 92 ; Edwards v. Daley, 14 La. An. 384.) The distinction between those cases in which the transaction constitutes such an assignment and those in which it does not seems to depend upon the question whether the party having the control of the fund intended in fact to make an absolute appropriation of it, or whether he intended to retain the control of it. Where a debtor gives to his creditor an order upon one indebted to him, such order will be construed as an equitable assignment of the debt, even though the debtor on whom it is drawn had never assented thereto. (Dickenson v. Phillips, 1 Barb. 460 ; Ford v. Angelrodt, 37 Mo. 57 ; Rodick v. Gandell, 15 Eng. L. and Eq. 30.)

II. The petition alleges and the demurrer confesses that defendant promised to accept. This brings the case within Gray v. Trafton, 12 La. An. 702.

III. If the bill of exchange was simply as a letter of attorney from the Express Company to collect its dues, even then it was a power coupled with an interest; therefore irrevocable, and operates as an equitable assignment. (Houghtaling, Adm'r, v. Marvin, 7 Barb. 412.)

*Ewing & Holliday*, for respondent.

I. A bill of exchange not accepted does not operate as an assignment to the holder of the unaccepted bill of the indebtedness of the drawee to the drawer. (Kimball v. Donald, 20 Mo. 577; Ford v. Angelrodt, 37 Mo. 50; 1 Sandf. 416; 3 Sandf. 257; 3 Comst. 243; 1 Curtis, 133; 5 Hill, 413–417; 7 Hill, 577, 2 Am. Lead. Cas., ed. 1852, p. 141; 1 Seld. 525; 2 Seld. 412; 15 La. 255; 3 Kent's Com. 76; Sto. on Bills, §§ 46, 47.)

II. There is no allegation in the petition in this cause that any other contract was made than the law raises from the position in which the names of the parties appear to the bill. As to what this contract is, see 1 Pars. on Notes and Bills, p. 54, § 54.

III. There is no allegation that this draft was drawn on any particular fund. An order drawn on any particular fund has, after acceptance or promise of payment, been allowed to operate as an equitable assignment of the fund. But there was no particular fund in this case. The Express Company had no money in the hands of defendant Bogy. He may have been indebted to the Company for his subscription, but that is quite a different thing from having certain funds in his hands belonging to the drawer.

BLISS, Judge, delivered the opinion of the court.

The petition alleges that the plaintiff is a corporation organized under the laws of Maryland; the National Express and Transportation Company is a corporation of Virginia, to whose stock of $100 a share the defendant subscribed for fifty shares, " and then and thereby obligated himself to pay said Express Company the sum of $100 per share, or $5,000 in all, at such times and in such sums as should be required and ordered by the legally constituted officers of the said Express Company, and to this end to accept of such drafts as should from time to time be drawn by said Express Company on defendant for the calls of stock which should be made, and until the sum of $100 per share has been paid." The petition further alleges that the officers of the company, on the 26th of April, ordered that the shareholders, including

defendant, should, on or before the 10th of May, 1866, pay five per cent. on each share; and on the 8th of August, 1866, made a further call of five per cent., payable the 25th, making in all $500. On the 10th of August, 1866, the Express Company drew a bill upon defendant, at ten days' sight, for his indebtedness, and for a good consideration negotiated it to the plaintiff, "whereby plaintiff became subrogated in all the rights of the said Express Company, as the assignee of the said Express Company, of the indebtedness due to it" by the defendant. The petition alleges presentation of the draft, but acceptance was refused.

Defendant demurs to the petition: first, because of the joinder of different causes of action; and second, because the facts stated do not constitute a cause of action; alleging a want of allegation of facts sufficient to charge the defendant upon the bill, etc.

There is but one cause of action set out in the petition. The other allegations are intended only as averments necessary to establish a liability upon the bill. But the pleader has evidently drawn his petition upon the hypothesis that a bill upon a debtor for the exact amount of the debt is, *ipso facto*, by operation of law and without regard to the intention of the parties, an assignment of the debt to the person in whose favor the bill is drawn. The petition alleges the indebtedness by virtue of the subscription to the stock of the Express Company; the promise to accept drafts for the assessments as they should be made; the drawing and negotiation of the bill to the plaintiff for a good consideration, "whereby plaintiff became subrogated in all the rights of said Express Company, as the assignee," etc., "of the indebtedness due to it;" etc. There is no averment of any assignment to the plaintiff of defendant's indebtedness; no question of fact of intention in that regard is raised, but the legal effect of the bill is relied on. Neither does the pleader rely upon the previous general promise to accept such draft as should be drawn on him to cover the assessment; for that promise, even if it would be obligatory, is not alleged as made in fact, but is only charged as a legal inference from the subscription. "Plaintiff further avers that defendant subscribed to the capital stock," etc., "and then and thereby obligated himself," etc., "and to this end to accept,"

etc.; *i. e.*, the legal effect of his subscription was an obligation to pay for the shares and to accept drafts for the calls of stock, and no express promise to accept the bill is alleged.

The pleader is mistaken in his view of the law. A bill drawn upon a debtor does not of itself operate as an assignment in equity of the debt, even if it is negotiated for a good consideration. It is evidence tending to show such assignment, and, with other circumstances to show that such was the intention of the drawer, will vest in the holder an exclusive claim to the indebtedness. The question of what constitutes an equitable assignment of a debt or a fund, in connection with an order or draft upon the debtor or holder of the fund, has often been before the courts of the country. There is some difference in the language used by different judges, arising more from the varying circumstances of the several cases than from conflict of opinion. I have found no case where a mere bill, though negotiated for a good consideration, is held of itself, without regard to the intention of the drawer, to operate as an assignment of the debt or fund, or so much thereof as is covered by the bill. Nor have I seen a case where the courts have refused to carry into effect the intention of the parties in relation to such debt or fund. In Kimball v. Donald, 20 Mo. 577, Judge Leonard clearly states the recognized doctrine: "Anything that shows an intention on the one side to make a present irrevocable transfer of the fund, and from which an assent to receive it may be inferred on the other, will operate in equity as an assignment, if supported by a sufficient consideration." The court in that case denied that the bill then under consideration evidenced a transfer of the fund, without reference to the intentions of the drawers; and the case is followed in Ford v. Angelrodt, 37 Mo. 50. In both cases circumstances were held to indicate that it was not the intention of the drawer to make such a transfer. In Dickenson v. Phillips, 1 Barb. 454, the court, in holding that the transaction under consideration did not amount to an assignment, recognize the doctrine in saying that "no particular form of words is necessary to constitute an equitable assignment. But there must be evidence of intention to appropriate the fund."

It has always been held that an order founded upon a good consideration, given for a specific debt or fund owing by or in the hands of a third person, operates as, or rather is evidence of, an equitable assignment of the demand to the holder, so that he may sue and recover the debt or fund whether the order be accepted or not. (Walker v. Mauro, 18 Mo. 564; Blinn v. Pierce, 20 Verm. 25; Edwards v. Daley, 14 La. An. 384; Rodick v. Gandell, 15 Eng. Law and Eq. 22; 1 Atk. 124; Mandeville v. Welch, 5 Wheat. 277.)

But an unaccepted bill of exchange does not of itself give the holder any interest in the fund or property against which it is drawn. In most of the cases cited the bills have been drawn against consignments in the ordinary course of business. Cowperthwaite v. Sheffield, 1 Sandf. 416—and on appeal, 3 N. Y. 243—is a leading modern case. The bills, with others, were drawn in Mobile, against shipments of cotton to Glasgow; were indorsed by defendant, and protested for non-acceptance. The cotton afterward arrived, but the drawers failed, and a contest arose respecting the funds in the hands of the drawee. The court held that the bills gave no specific claim upon the proceeds of the cotton, but treated them as ordinary bills of exchange, binding the drawees only upon acceptance, and not as orders for a specific fund. In Luff v. Pope, 5 Hill, 413, and on appeal, 7 Hill, 577, a general order or draft was treated as a bill of exchange, and not an order for a specific fund. (See also Marine and Fire Insurance Bank v. Jauncey, 3 Sandf. 257.) In none of these cases, nor in the cases cited from our own reports, was there any assignment in fact, nor evidence of present intention to assign to the holder of the bill the fund against which it was drawn.

An order for a specific fund usually contains something to indicate an intention to pass or appropriate the whole fund, as, "Pay to A. B. $——, the amount of your collection from C. D.," or the amount received upon such or such a transaction. Or, it may not specify the character of the fund. But when the money is in the hands of the drawee, and the order is given for the exact amount, and a full consideration has been received for it—especially if advanced at the time, with no circumstances

indicating any remaining interest in the drawer—the order should be treated as evidence of an equitable assignment. In Mandeville v. Welch, 5 Wheat. 277, Judge Story makes the amount of the order—the fact that it is or is not drawn for the whole of a particular fund—a test of the obligation of the debtor to accept it. Upon an issue upon the fact of the assignment, involving the intention of the drawer and holder of the bill, consideration, etc., facts may transpire that would relieve the case from all embarrassment. But if it should merely appear that the bill was drawn in the usual course of business, was cashed by the holder, or received as security for or in satisfaction of an existing debt, and that it covered the precise amount already due the drawer from the drawee, we are not now called upon to say what effect should be given such a state of facts—whether the paper should be treated as an ordinary bill of exchange, or as an order for a specific fund, losing its character as a bill.

Though we find no error in sustaining the demurrer, yet, that the issue may be raised as indicated, the judgment will be reversed at the costs of the appellant and the cause remanded. The other judges concur.