DAVID McEWEN, APPELLANT, v. STERLING STATE BANK, RESPONDENT.[*]

Kansas City Court of Appeals. February 13, 1928.

.*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2556, p. 662, n. 84; section 2590, p. 691, n. 85; section 3057, p. 1068, n. 22; Assignments, 5CJ, section 82, p. 922, n. 65; section 98, p. 937, n. 64; Garnishment, 28CJ, section 8, p. 23, n. 15, 18; section 350, p. 253, n. 27, 34; section 351, p. 254, n. 46; section 352, p. 255, n. 51; section 357, p. 259, n. 98; p. 260, n. 4; section 602, p. 381, n. 14; Judgments, 34CJ, section 832, p. 526, n. 1; p. 527, n. 7; section 836, p. 533, n. 40, 42; section 839, p. 536, n. 63; p. 537, n. 66; section 841, p. 537, n. 72; section 842, p. 542, n. 98.

*L. A. Laughlin* and *W. O. Cardwell* for appellant.

*Sharp & Sharp* and *Ed. E. Aleshire* for respondent.

BLAND, J.—This is an action to recover the amount of a deposit in the defendant bank. The case was tried before the court without the aid of a jury. At the conclusion of plaintiff's evidence the court

sustained defendant's demurrer to the evidence and thereupon plaintiff took an involuntary nonsuit with leave to. move to set aside the same. Such a motion was filed but it being unavailing, plaintiff has taken an appeal to this court.

The petition alleges that Edith McEwen on September 25, 1925, had on deposit with defendant the sum of $538.24; that on said day she gave plaintiff, for a valuable consideration, an assignment in writing for the whole of said sum and that on the same day plaintiff presented the assignment to defendant and demanded payment of said sum but payment was refused. The answer of defendant was a general denial and an admission that Edith McEwen had said sum on deposit on said day but it pleaded, as a reason for refusing to pay the deposit to plaintiff, certain garnishment proceedings in the circuit court of Clinton county wherein one Lawrence L. Spore was plaintiff and said Edith McEwen was defendant and wherein defendant in the case at bar had been summoned as garnishee.

Plaintiff filed a reply disclosing the following: That the said suit of Spore v. McEwen, was begun in the circuit court of Clinton county on January 9, 1925; that on the same day a summons was issued directed to the sheriff of Clinton county, Missouri; that the return upon the summons read as follows:

"Executed this writ in the county of Clinton this 9th day of January, 1925, by delivering a copy of this writ and summons as furnished by the clerk to the within named party, Edith McEwen. (Signed) G. R. Whitaker, Sheriff of Clinton County."

The reply further pleads that said Edith McEwen did not appear in said cause but on April 9, 1925, that court rendered judgment by default against the defendant therein for the sum of $500 and costs (the whole apparently amounting to as much or more than the fund in dispute); that on said last-named day execution was issued on said judgment and defendant in the case at bar was summoned as garnishee on April 11, 1925. The reply then alleges that the return of the sheriff of Clinton county was wholly insufficient to give the court jurisdiction over the person of the defendant therein but it does not state in what particular it was insufficient; that at the time the bank was summoned as garnishee and at the time plaintiff herein on September 25, 1925, presented the written assignment to the defendant bank for $538.24, there was no valid or legal judgment in the case of Spore v. McEwen; that on October 2, 1925, defendant bank filed its answer as garnishee in said case of Spore v. McEwen, wherein it was stated that it had in its possession the sum of $538.24, being a deposit in the bank in the name of Edith McEwen, and the bank further answered that it had been notified and declared its belief to be that the money in its hands had been sold or assigned to one David McEwen (plaintiff in the case at bar). The reply further discloses that on October 6, 1925, plaintiff in said cause of Spore v. McEwen, filed

a reply to garnishee's answer in said cause, denying each and every allegation contained therein in connection with the amount of money set out in garnishee's answer as having been assigned or sold to David McEwen; that on the same day the court took up garnishee's answer as well as plaintiff's reply thereto and found that said garnishee had not discharged itself by the payment of the money into court; that the claimant mentioned in said garnishee's answer had no interest in said fund and adjudged that unless the garnishee pay to the sheriff of Jackson county or the circuit court of Clinton county said sum of $538.24 on or before November 9, 1925, plaintiff therein would be entitled to final judgment against said garnishee for said sum. The reply further pleads that the circuit court of Clinton county was without power or authority to proceed further in said cause after the filing of the answer of the garnishee until the plaintiff herein, David McEwen, had been summoned to appear therein; that he had not been summoned nor did he appear therein but, notwithstanding, the court on said October 6, 1925, proceeded to pass upon the rights of this plaintiff; that the action of the court in assuming to pass upon the rights of the plaintiff in the case at bar and in ordering said sum to be paid into court by the garnishee bank, was without its jurisdiction and was null and void; that the bank in paying over the money, if it did so as alleged in the answer, did so with the full knowledge of the rights of plaintiff. The reply also consists of a general denial.

Upon a trial of the case the following facts were developed; that plaintiff is a resident of Kansas City, Missouri, and defendant is a State bank in the same city; that plaintiff and Edith McEwen are husband and wife; that he was in business and being illiterate his wife did the clerical work and kept the bank deposit in her name; that she had made several deposits with the bank and on September 25, 1925, had on deposit with defendant bank the sum of $538.24, all of which belonged to plaintiff; that on that day, at the request of plaintiff, his wife gave him a check on the defendant bank for the exact amount of the deposit. Plaintiff's attorney testified that he accompanied plaintiff to the bank and presented the check to the cashier for payment; that he had previously acquired knowledge that the money had been garnished; that before going to the bank he ascertained the amount on deposit to the account of Edith McEwen and had had the check drawn and Edith McEwen to sign it for that amount; that payment of the check was refused, but the check was retained by the cashier; that the cashier drew a cashier's check for the amount of plaintiff's check and the cashier "held it there in case the garnishment was released." The witness testified that he had talked to the cashier prior to the time the witness asked for the payment of the McEwen check and "it was understood all along that that money belonged to Mr. McEwen but was carried in Mrs. McEwen's name,"

but as to exactly when the bank first acquired knowledge of this, is not shown in the testimony.

Plaintiff introduced in evidence the interrogatories to the garnishee bank in the case of Sport v. McEwen, which was filed in the circuit court of Clinton county on October 2, 1925. The answer of said garnishee is as follows:

"In answer to the first interrogatory it says that at the time it was summoned as garnishee it had and has now in its possession money on deposit to the credit of the defendant, Edith McEwen, in the sum of five hundred thirty-eight and 24/100 dollars ($538.24).

"In answer to the second interrogatory it says that at the time it was summoned as garnishee, it was not nor has it since become indebted to the defendant, Edith McEwen, in any wise except as above stated.

"In answer to the third interrogatory it says that at the time it was summoned as garnishee it was not nor has it since become bound in any contract to pay the defendant, Edith McEwen, any money which is not yet due.

"Further answering the garnishee states that it has been notified and so declares its belief to be that the money in its hands has been sold or assigned to one David McEwen."

It is insisted that the court erred in sustaining defendant's demurrer to the evidence for the reason that Edith McEwen, having assigned the entire deposit in the bank in her name to plaintiff and defendant having refused to acknowledge the assignment, a cause of action for the amount of the deposit accrued in favor of plaintiff. The rule in Missouri prior to the Negotiable Instruments Act, passed in this State in 1905, was to the effect that an order drawn for the exact amount of an account in the hands of the drawee, full consideration having been received for the order, with no circumstances indicating any remaining interest in the drawer, would operate as an equitable assignment to the payee of the account and needed no acceptance on the part of the drawee to make it valid, and after notice to the drawee it bound the funds in his hands. [Bank of Commerce v. Bogy, 44 Mo. 13; Boyer v. Hamilton, 21 Mo. App. 520.] The rule is stated in Rice v. Dudley, 34 Mo. App. 383, 391, in this manner:

". . . where an order is drawn by the debtor in favor of the creditor on the drawee for the whole of a specific fund, the acceptance of the drawee is not necessary to the validity and lien of the assignment so made. An order calling for a fund in its entirety seems not to be within the operation of the rule which enjoins acceptance by the drawee." [See, also, Walker v. Mauro, 18 Mo. 564; McClain v. Weidemeyer, 25 Mo. 364; Mo. Pac. Ry. Co. v. Wright & Co., 38 Mo. App. 141.]

However, it was equally well settled in this State that the giving of a check for a part of the fund was not an assignment of the fund *pro tanto* in the absence of acceptance or certification of the check by the drawee. The reason given for this holding was that the debtor has a right to pay his debt *in solido* and to refuse to be subjected to suits by several to claims which might result if the law compelled him to recognize each order as an assignment *pro tanto* of the funds. [See Rice v. Dudley, supra, 391, 392.] This rule in Missouri is what is called the majority rule. However, some of the states held that the giving of a check for a part of the deposit was an assignment *pro tanto* (see, L. R. A. 1916C, pp. 165-171); this was referred to as the minority rule.

In 1905 this State adopted the uniform negotiable instrument law. Section 975, Revised Statutes 1919, of that law reads as follows:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

The parties hereto are unable to agree as to the proper construction to be given section 975. Plaintiff claims that it does not change the rule in reference to an order for the entire fund in the hands of the creditor while defendant contends to the contrary. We are of the opinion that this section of the statute does not affect the rule in reference to an order for the entire amount in the hands of the creditor. In the case of Leach v. Mechanics' Sav. Bank, 211 N. W. 506 (Iowa), the court stated that the State of Iowa, before the adoption of the negotiable instrument law, had adhered to the minority rule and that the purpose of the adoption of the negotiable instrument law in reference to the question now before us, was to prescribe a rule in accordance with the majority holding, that is, that a check or draft of itself does not operate *pro tanto* as an assignment of the fund on deposit and that the drawee, the bank, is not liable to the payee until it has accepted or certified the instrument. The court, l. c. 509, said—

"The legislative intent in the enactment of sections 127 and 189 of the original act was to remove the conflict between the majority and the minority holdings in this particular, and to make clear that thereafter the drawee should not be deemed liable to a holder, as had theretofore been held under the minority rule, at least in those situations where the holder's claim to be an assignee rested upon the instrument alone."

And at l. c. 511—"Upon a review of the decision in various jurisdictions since the adoption of the uniform Negotiable Instruments Act, it may be said that, even in the absence of acceptance or certification, the holder of a check or bill may have effective rights against the drawee by virtue of (1) an assignment, (2) a contract for

his benefit, (3) a trust for his benefit; and there may be other conditions or special facts giving rise to an equation, resulting in the solution of the problem in equity in favor of the holder.''

Even in jurisdictions following the majority rule, it was held that the owner of a chose in action or property in custody of another might assign, under some circumstances, a part of such rights and that an assignment of this nature, if made, would be enforced in equity. [Fourth Street National Bank v. Yardley, 165 U. S. 634.] Texas was one of the states that followed the majority rule and in Hatley v. West Texas National Bank, 284 S. W. 540, 541 (Texas), speaking of the statute now before us, the court stated that the negotiable instruments law—

''. . . provides that a check shall not operate as an assignment of any part of the funds to the credit of the depositor with the bank, yet it is entirely competent for the parties to create such an assignment by their agreement or understanding, oral or otherwise, in addition to the check that such shall be the effect of the transaction. [Rising Start First Nat. Bank v. Texas Moline Plow Co. (Tex. Civ. App.), 168 S. W. 420.] This is but a recognition of the right of contract between the parties, that is, to create an assignment, and is not at all forbidden by the terms of the act, which declares that the check itself shall not amount to an assignment pro tanto of itself.''

We think section 975, Revised Statutes 1919, merely provides that there shall be no assignment *pro tanto* of the fund to the credit of the drawer unless something more than the check itself is shown and that section does not modify or affect the rule in force in this State prior to its adoption to the effect that an order drawn on the whole of the debt is an equitable assignment of it and the party in whose favor the order is drawn may sue for the debt in his own name. [Leach v. Mechanics' Sav. Bank, supra; Hatley v. Nat'l Bank, supra; People's Nat'l Bank v. Swift, 134 Tenn. 175; First Nat'l Bank v. O'Byrne, 177 Ill. App. 473; Dunlap v. Bank, 195 Pac. 688; Hove v. Stanhope State Bank, 138 Iowa 39.] The contrary view was taken by the Supreme Court of Massachusetts in the case of Burrows v. Burrows, 134 N. E. 271, but we do not think that this case is a wellreasoned one and that the weight of authority is against the ruling therein.

But our holding in the above respect by no means results in the conclusion that the trial court committed reversible error in sustaining the demurrer to the evidence. If the judgment of the trial court can be sustained upon any theory, it is our duty to uphold it. [Commiskey v. McPike, 20 Mo. App. 82; Burnett v. Western U. Tel. Co., 39 Mo. 599; State ex rel. v. Jones, 131 Mo. 194.] The facts admitted and alleged in the reply in our opinion show no defense to the answer setting up the garnishment proceedings in the case of Sport v. McEwen, as a bar to this suit. While the point is not raised it seems to

us beyond any question that plaintiff in taking the assignment of the deposit from Edith McEwen took it with all the burdens of the garnishment proceedings. It is well settled that—

". . . the service of garnishment has the effect of attaching any money of defendant then in the hands of the garnishee or that may be owing by the garnishee to defendant between that time and the time of filing the answer of the garnishee." [Stevenson v. Adding Mach. Co., 150 Mo. App. 555, 564.]

It will be remembered that the assignment was made after the service of the garnishment upon the bank and with full knowledge by plaintiff's attorney of the pendency of the garnishment proceedings. It is well settled in this State that the object of garnishment proceedings is to impound or appropriate a specific sum of money belonging to and due defendant and owing by the garnishee. [Bambrick v. Bambrick Bros. Const. Co., 152 Mo. App. 69, 74.] After the service of the garnishment writ the debt or property in the hands of the garnishee is regarded as *in custodia legis,* and he becomes custodian of the property for the purpose of the garnishment. His duty is to retain the fund or property even against the true owner, to be disposed of in accordance with the order of the court. The garnishee is a mere stakeholder and must not do any voluntary act to the prejudice of either plaintiff or defendant. [28 C. J. 259, 260.] He cannot pay the principal defendant in the suit nor can the latter collect the debt from the former. [28 C. J. 253, 254.] We think that it follows as a matter of course that the defendant in such a case cannot, after service of the writ of garnishment, assign the debt to some other so that the latter may collect it. In fact, this has been directly held. [See Loomis v. Shriner, 165 Mo. App. 25, 30; Bank v. Swinney et al., 135 Mo. App. 1, 4; Hall v. Nunn Electric Co. (Texas), 214 S. W. 452, 455.] It was stated in the Texas case cited that the assignee, after service of the writ of garnishment, took in that case the property and money garnished *cum onere;* that the assignee stepped into the shoes of the assignor with the superior right to the garnished money in the garnishee by virtue of the writ of garnishment, and the creditor could not invest the assignee with a better right than the assignor had.

It is well settled that garnishment is not intended to deprive the garnishee of any of his own rights or to subject him to double actions. [28 C. J. 23.] To permit plaintiff to maintain this action would be subjecting the bank to payment of the debt twice, the money having been previously impounded in its hands by the running of the writ of garnishment and, subsequently, adjudged to be that of defendant. The question naturally arises as to whether there is anything preventing the plaintiff herein from setting up the alleged lack of jurisdiction of the circuit court of Clinton county of the defendant in the case of Spore v. Edith McEwen, such lack of jurisdiction arising by reason of the alleged defective return of the sheriff in the service of

process upon her, she not having entered her appearance in the case. It is well settled that where a court undertakes to try the action and render judgment without acquiring jurisdiction of the person of the defendant, the judgment is entirely void and may be so held in a collateral attack, unless the defendant by appearing in the action waived the original want of jurisdiction. [34 C. J. 532.] However—

"A judgment cannot be impeached in a collateral proceeding on the ground that the return or proof of service of process was defective, irregular, or informal. It is otherwise, however, where there is no return, where the return is made by the wrong person, or where the return or proof wholly fails to show the facts necessary to give the court jurisdiction. [34 C. J. 536, 537.]

It is true that the return of the sheriff in this case is defective in that it does not show that he delivered a copy of the petition to the defendant in that case as required by section 1186, Revised Statutes 1919. However, this is not such a defect as would warrant us in holding in a collateral proceeding the judgment to be void. It is held that a judgment cannot be collaterally attacked because a copy of the petition was not served on defendant in the original case. [Thompson v. Ry. Co., 110 Mo. 147, 156; 34 C. J. 533; Drake v. Duvenick, 45 Calif. 455; Shirran v. Dallas et al., 132 Pac. 454; Shirran v. Dallas, 132 Pac. 462 (Calif.); Oppenheim v. Pittsburg, Cinn. & St. L. Ry., 85 Ind. 471; Axman v. Dueker, 45 Kans. 179, 181; Sandusky Cement Co. v. Hamilton & Co., 273 Fed. 596; Perryman v. The State, 8 Mo. 208, 209, 210; Draper v. Bryson, 17 Mo. 71.] There is nothing in the cases of Westmeyer v. Gallenkamp, 154 Mo. 28, and Feurt v. Caster, 174 Mo. 289, inconsistent with this holding. In the Westmeyer case nothing whatever was served upon the defendant and in the Feurt case substituted or constructive service was involved and, of course, the law in reference to such service must be strictly complied with.

However, if necessary to uphold the judgment of the court in the Spore case, it will be presumed that a copy of the petition was served upon the defendant in that case. The circuit court of Clinton county is a court of general jurisdiction. As was stated by the Supreme Court of California in Drake v. Duvenick, supra, l. c. 462—

"The rule is elementary that upon collateral attack all intendments are indulged in support of the judgments of courts of superior jurisdiction. Their records are conclusively presumed to speak the truth, and whatever is upon their records is presumed—the contrary not appearing—to be rightfully there." [See, also, 34 C. J. 537-541.]

In McIntyre v. St. Louis & San Francisco Ry., 286 Mo. 234, 245, it is said—

"In some of the cases cited it is stated that if the record *on its face* shows an absence of the facts which are necessary to confer jurisdiction, the court is without jurisdiction and the judgment is a nullity. But that would not be the case if the facts showing want of jurisdic-

tion, or absence of facts showing jurisdiction, had to be ascertained outside of the record.''

The return in the Spore case is peculiarly worded. It says that the sheriff executed the writ by delivering a copy of the writ and summons. As the summons is the writ in such a case (sec. 1185, R. S. 1919), it may be that the sheriff meant to use the word ''petition'' instead of ''summons'' but this is a matter of speculation more or less. However, it will be noted by the return of the sheriff that it is not shown that he failed to deliver a copy of the petition in the case of Spore v. McEwen to the defendant therein. In Foster v. Berry, 14 R. I. 601, 602, 603—

''. . . It may be argued that the presumption is that everything that was done appears in the return, because the officer is directed to return the writ with his doings thereon. But it may likewise be argued that the presumption is that the defendant did not sell before advertising the sale, because the statute makes it his duty to advertise before selling. Both presumptions are equally strong, and therefore all we can say is that the return does not show whether the sale was duly advertised or not. Consequently it was for the plaintiff to show the omission to advertise by extrinsic evidence, and he adduced no such evidence. In a proper case, of course, the defects and ommissions in the return may be supplied by amendment.'' [See, also, State to use v. Williamson, 57 Mo. 192; Wilson v. Jackson, 10 Mo. 329; Crawley v. Wallace, 12 Mo. 143.]

The only question that remains to be determined is whether, assuming there is no privity between Edith McEwen and plaintiff herein as far as the case of Spore v. McEwen, is concerned, plaintiff herein not being a party to the record in the case of Spore v. McEwen, is he precluded from collaterally attacking the judgment? It will be noted that plaintiff's claim accrued after the rendition of the judgment in the Spore case.

''A stranger to the record, who was not a party to the action in which the judgment was rendered nor in privity with a party, is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition, unless the judgment is absolutely void. Thus situated he may attack the judgment on the ground of want of jurisdiction, or for fraud or collusion; but he cannot object to it on account of mere errors or irregularities, or for any matters which might have been set up in defense to the original action.'' [34 C. J., pp. 526, 527; State ex rel. v. Ellison, 285 Mo. 301; McIntyre v. Frisco Railroad, supra, l. c. 246; Abington v. Townsend, 271 Mo. 602.] Plaintiff's claim accrued after the rendition of the judgment in the Spore case and he cannot collaterally attack the judgment in that case.

It is true that the defendant herein, the garnishee in the Spore case, did not ask the court to make an order upon the plaintiff herein requiring him to interplead for the money under section 1872, Revised Statutes 1919. Even if the statute had any application, the garnishee is not complaining and it would have been necessary for plaintiff to set up in this case some facts showing that he had been adversely affected by the failure of the court to follow the proceeding laid down by the statute. However, it was stated in the case of Shelton v. Cooksey, 138 Mo. App. 389, 395,—

"Section 3459, Revised Statutes 1899, provides: 'If the garnishee discloses in his answer, and declare his belief, that the debt owing by him to the defendant, or the supposed property of the defendant in his hands, has been sold or assigned to a third person, and the plaintiff contests or disputes the existence, force or validity of such sale or assignment, the court shall make an order upon the supposed vendee or assignee to appear at a designated time and sustain his claim to the property or debt.' This statute is held to be directory only, and the court had 'the right under the pleadings to pronounce upon them, in the absence of the claimant, as neither party had demanded that he should be brought before the court.' "

There would have been no purpose in the court in that case requiring plaintiff herein to interplead. He had no interest in the fund as far as the rights of the plaintiff therein and the garnishee were concerned. If a defendant can assign the fund in the hands of the garnishee after the writ of garnishment is served, so as to defeat the rights of plaintiff in the case, then the garnishment law can be easily evaded in such cases. The courts will not countenance any evasion of this kind. If plaintiff herein had been allowed to interplead in the Spore case, so far as anything set up in the pleadings in the case at bar is concerned, he would have obtained no relief. He could not have raised any point in reference to the defective service on defendant in that case (28 C. J. 381; Reeves Grocery Co. v. Thompson, 105 Miss. 729; Chapman v. Yancey, 173 Mo. App. 132, 145), and when it was made to appear that his rights were dependent upon an assignment of the fund after the service of the garnishment writ, he would have been out of court. Under the theory pleaded in the petition, it makes no difference as to when the defendant herein acquired knowledge that the account with it in the name of Edith McEwen was actually that of her husband, the plaintiff herein. Plaintiff is not entitled to recover under his petition.

The reply attempts to set up a constitutional question by pleading the following:

". . . the action of said Clinton county circuit court in disregarding the rights of this plaintiff and denying him an opportunity to be heard were in violation of section 30, article II, of the Con-

stitution of Missouri and of article XIV of the amendments to the Constitution of the United States.''

. This matter is nowhere referred to in any other part of the proceedings. It is not mentioned in plaintiff's brief upon which the case was submitted to this court. A constitutional question cannot be injected into the case in this court in this manner. [State v. Hale, 248 S. W. 958.]

The judgment is affirmed. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.