THE STATE EX REL. AMERICAN CENTRAL INSURANCE COMPANY v. FREDERICK GEHNER, As Assessor, and As President, and A. R. SCHOLLMEYER ET AL. As Members, of BOARD OF EQUALIZATION OF CITY OF ST. LOUIS.—9 S. W. (2d) 621.

Court en Banc, July 30, 1928.

*Bryan, Williams & Cave,* for relator.

*Julius T. Muench* and *Charles J. Dolan* for respondents.

WHITE, J.—The relator brings this proceeding to quash the record of the Board of Equalization of the City of St. Louis. Relator in its statement for taxation, June 1, 1925, listed its taxable assets at $288,145.01. The matter came before the Board of Equalization of the City of St. Louis and the amount of taxable assets of the relator was found to be $500,000, and it was assessed accordingly.

On a hearing before the Board of Equalization the classified schedule of assets of the relator was introduced, as follows:

## AMERICAN CENTRAL INSURANCE COMPANY.
### June 1, 1925.

| Classification | Non-Taxable | | In Missouri | Total |
| --- | --- | --- | --- | --- |
| | Acc. Class | Acc. Location | | |
| U. S. Government Bonds | $ 194,576.50 | ........... | ........... | $ 194,576.50 |
| U. S. Government Bonds on Special Deposit | 11,110.00 | ........... | ........... | 11,110.00 |
| Foreign Government Bonds | ........... | ........... | $ 52,000.00 | 52,000.00 |
| Foreign Government Bonds on Special Deposit | ........... | $ 82,400.00 | ........... | 82,400.00 |
| State, Prov. and County Bonds | ........... | ........... | 117,390.00 | 117,390.00 |
| State, Prov. and County Bonds on Special Deposit | ........... | 73,600.00 | ........... | 73,600.00 |
| Municipal Bonds | ........... | ........... | 417,350.00 | 417,350.00 |
| Municipal Bonds on Special Deposit | ........... | 203,575.60 | ........... | 203,575.60 |
| Railroad Bonds | ........... | ........... | 4,282,244.00 | 4,282,244.00 |
| Public Utility Bonds | ........... | ........... | 572,730.00 | 572,730.00 |
| Miscellaneous Bonds | ........... | ........... | 339,050.00 | 339,050.00 |
| Miscellaneous Bonds on Special Deposit | ........... | 50,000.00 | ........... | 50,000.00 |
| Stocks in Missouri Corporations | 234,433.00 | ........... | ........... | 234,433.00 |
| Stocks in other Corporations | 108,925.00 | ........... | ........... | 108,925.00 |
| Real Estate Loan | ........... | ........... | 15,000.00 | 15,000.00 |
| Money in Banks and Cash in Missouri | ........... | ........... | 97,004.34 | 97,004.34 |
| Money in Banks outside Missouri | ........... | 115,387.23 | ........... | 115,387.23 |
| Uncollected Premiums in Missouri | 79,280.51 | ........... | ........... | 79,280.51 |
| Uncollected Premiums outside Missouri | 1,338,704.04 | ........... | ........... | 1,338,704.04 |
| Totals | $1,967,029.05 | $524,962.83 | $5,892,768.34 | $8,384,760.22 |

Deductions.

| | | |
| --- | --- | --- |
| Unearned Premium or Reinsurance Reserve | $4,659,804.05 | |
| Reserve for Unpaid Losses | 944,819.28 | |
| | $5,604,623.33 | $5,604,623.33 |
| | | $ 288,145.01 |

The assessment of $500,000 increased the amount returned as assessable by about $222,000.

Among the assets returned as non-taxable *on account of location,* it will be noted, are the following:

Deposited in banks outside of Missouri ............$115,387.23
Municipal bonds on special deposit ..................203,575.60
State, Prov. and County Bonds on Special Deposit .. 75,600.00

These altogether would more than make the balance between the amount returned for taxation and the amount assessed. As pointed out in the American Automobile Insurance Company, Relator, v. Gehner et al., Respondents, 320 Mo. 702, the money in bank and the municipal and other bonds claimed to be non-taxable on account of the location in other states, are credits and are taxable at the domicile of the owner.

Then we have further the items returned as non-taxable on account of class:

"Uncollected Premiums in Missouri, $79,280.51" and "Uncollected Premiums outside Missouri $1,338,704.04." These are listed as assets. Being assets they are credits and taxable. The fact that they are due from policyholders outside of Missouri would not prevent their being taxable in this State, as was decided in the American Automobile Insurance Company case.

It is quite remarkable if premiums to that amount are uncollected, for premiums are usually paid in advance. We have them listed in the original return with this explanatory characterization of the two items aggregating $1,417,984.55.

*"Uncollected Premiums Subject to Cancellation and Return of Policies Not Taken."*

We need a glossary to make that cryptic statement intelligible. By what sort of magic can a policy not taken be returned? Are we to understand that the relator makes insurance contracts before policies are "taken" and before premiums are paid? Or, is that a method of dressing for exhibition the unearned premiums on deposit in the banks of other states?

I. We pointed out. with a review of the authorities, in the American Automobile Insurance Company v. Gehner, 320 Mo. 702, that such assets have a taxable situs at the domicile of the owner. The rule is stated in 37 Cyc. at page 955, as follows:

"Property of an intangible nature, such as credits, bills receivable, bank deposits, bonds, promissory notes, mortgage loans, judgments, and corporate stock, has no situs of its own for the purpose of taxa-

tion, and is therefore assessable only at the place of its owner's domicile.''

State ex rel. v. Brinkop, 238 Mo. 298, is cited as a holding contrary to that rule. In that case the assessment of the property of an insurance company was quashed on certiorari. The property assessed, about which the ruling is claimed to be in point, consisted of premiums on policies issued by the insurance company outside of Missouri ''on which sums the insurance company was assessed and paid taxes in the states in which said non-residents lived;'' and bank deposits subject to check in banks outside of Missouri ''and taxable in the state where kept.'' It appears that the court had nothing before it except the bare statement of the relator's petition that such property was taxed and taxable in other states. The board of assessors, whose record was attacked, did not contest the fact in making the assessment. The quashing of the assessment was based squarely on the theory that taxes had already been paid on the property and the court declined to impose a double taxation.

The situation is entirely different from that which appears in this case and the other cases, including the American Auto Insurance case, recently decided by this court. As we pointed out, such assets were not taxed and could not be taxed in other states, and, according to the universal rule, were only taxable in this State, the domicile of the owner. Another feature makes the Brinkop case entirely different from this case. The liabilities and reserve were all listed against the assets in this State, though they accrued on account of business done in the other states. This does not appear in the Brinkop case.

Further, a principle announced in the Brinkop case is in conflict with the settled doctrine of this State. The opinion treats bank deposits, l. c. 320, as the money of the depositor, as belonging to him and as properly taxed to him. That is directly contrary to the universal rule recognized in this State that money deposited in bank becomes the property of the bank and is never the property of the depositor. The relation of debtor and creditor thereafter obtains between the depositor and the bank. [Vandagrift v. Masonic Home, 242 Mo. 138; 37 Cyc. 828.] The property of the depositor therefore is a credit which has no situs for taxation purpose except at the domicile of the depositor. It is true that the statute requires a taxpayer to list in his return all money deposited in bank or other safe place. That does not mean that he owns the money deposited in bank, but that such deposit is the measure of the bank's indebtedness to him. It is a credit to that amount.

There is still another reason why the Brinkop case should not control: it is in direct conflict with the statutes which we considered at length in the American Auto Insurance case.

A certificate of deposit is certainly an "evidence of debt" within the meaning of Section 12755, Revised Statutes 1919, and a premium uncollected is a *"credit,"* under the definition in Section 12967. In Leavell v. Blades, 237 Mo. 695, which is cited in the Brinkop case, emphasis is placed upon the necessity of giving effect to the statements in the tax return required of a taxpayer and the statutory duties of an assessor, in order to determine what is taxable, and that principle was ignored in the Brinkop case. This was elaborately discussed in the American Automobile Insurance case.

The latest deliverance of this court upon this subject was in the Zooks case, 317 Mo. 986, 296 S. W. 778. That involved an inheritance tax, but, whatever difference there might be between the application of an inheritance tax and a general tax so far as non-taxable property on account of its class is concerned, there should be no difference between the two so far as its *location* is concerned. In that case the property held taxable was shares of stock in a Nebraska corporation, a certificate of which was at the time out of the State for the purpose of safe-keeping. It was owned by a resident of Missouri. The language applied to it is in Section 589, Revised Statutes 1919, where it was said that the property involved shall include all personal property "within and without the State." That is certainly not stronger than the statement in Section 12755, in relation to evidences of debt, held in any state or territory other than that in which the owner resides. The Zooks case mentioned the Brinkop case and reviews generally all the cases on the subject, and in principle it is directly contrary to the holding in the Brinkop case.

The proposition stated in the Brinkop case, that the assets outside of the State were not taxable in this State because taxed in another State, is not sound nor in accord with the general rule upon the subject. While we showed in the American Auto Insurance case that such assets were not taxable and could not be taxed on constitutional grounds in other states, still, if they were so taxed, it would make no difference. Each state is sovereign and where it has a right to impose a tax, it cannot be deterred from imposing it by the fact that some other state has seen fit to tax the same property. It is not a double taxation. [37 Cyc. 755; Judy v. Beckwith, 15 L. R. A. (N. S.) 142.] In the latter case a copious note cites numerous cases illustrative of the rule. It is not unconstitutional or in conflict with any rule of law. The opinion in the Brinkop case concedes that, l. c. 320. The ruling in the

Brinkop case, so far as it may be said to apply to assets such as are under consideration here, is overruled.

A singular situation appears in listing, as unearned premium reserve, $4,659,804.05, far more than half the total assets. Section 6222, Revised Statutes 1919, provides the method of estimating that reserve, "by taking fifty per cent of gross premiums on all unexpired fire risks that have less than one year to run, and a pro rata of all gross premiums on risks that have more than a year to run."

Counsel construe "less than a year to run," to mean policies written for one year or less. The pro rata on other policies then must mean that part of each premium which is proportioned to the unexpired part of the policy's life. In that case, if the business was uniform, such part would amount approximately to fifty per cent of the premiums paid. Thus the total unearned premiums would be about fifty per cent of the total premiums paid on all policies in force. Then how could it be more than half the total assets? The uncollected premiums could not be counted as part of the reserve. for the latter must be always available. They amount to $1,417,904.55. The relator has a paid-up capital of $1,000,000, and a surplus of over $1,700,000. Its return shows $944,819.28 reserved for unpaid losses. Possibly the relator can figure all those items so as to show that, when the losses are paid, the unearned premiums could amount to the sum listed. The Board of Equalization had the power to compel the production of books and papers so as to force an explanation, but did not.

For the reason that taxable assets, amounting to more than the sum assessed, appear in the face of the return, the writ is quashed. All concur, except *Walker, C. J.*, who dissents, and *Blair, J.*, absent.