BANK OF REPUBLIC, Appellant, v. REPUBLIC STATE BANK ET AL.— 42 S. W. (2d) 27.

Court en Banc, September 28, 1931.

*Neale, Newman & Turner* for appellant.

*Farrington & Curtis* for respondents.

ELLISON, J.—The plaintiff, Bank of Republic, brought this suit in the Circuit Court of Greene County against the insolvent Republic State Bank, and S. L. Cantley, Commissioner of Finance, and Martin L. Howard, Special Deputy Commissioner, in charge of the liquidation thereof. The object of the action is to establish a preferred claim against the assets of the failed bank in the amount of $242.74, representing a bank draft for that sum which the plaintiff bank accepted from the defendant bank on the day the latter closed, April 17, 1928, in settlement of a balance due on items cleared between the two banks that day.

The circuit court denied the preference. The plaintiff bank appealed to the Springfield Court of Appeals, which, in an opinion reported in 24 S. W. (2d) 678, took the opposite view, reversing the judgment and remanding the cause on authority of one of its former decisions, Bank of Poplar Bluff v. Millspaugh, 275 S. W. 579, the opinion wherein was, on certification to this court, adopted *in toto* in 313 Mo. 412, 281 S. W. 733, 47 A. L. R. 754; also on authority of Federal Reserve Bank of St. Louis v. Millspaugh (Sp. Ct. App.), 275 S. W. 583, approved on certification to this court in 314 Mo. 1, 282 S. W. 706, also following Farmers' Bank of Bowling Green v. Cantley (St. L. Ct. App.), 16 S. W. (2d) 642.

But inasmuch as the St. Louis Court of Appeals in an earlier case, American Bank of DeSoto v. People's Bank of DeSoto, 255 S. W. 943, had ruled on similar facts that no preference was allowable; and inasmuch as this court failed in the Poplar Bluff case expressly to overrule the American Bank case, though the former was certified here because of supposed conflict with the latter; and since the Federal Reserve Bank case also was certified to this court for the same reason, but this court held in that case (314 Mo. 1. c. 9, 282 S. W. 1. c. 708) that our opinion in the Poplar Bluff case found there was no conflict between it and the American Bank case: for these reasons, we say, the instant case also is certified to us. In short, this makes the third case the Springfield Court of Appeals has certified to this court because of conflict with the American Bank case; and in view of the supposed ambiguity or conflict in our own decisions in the Poplar Bluff and Federal Reserve Bank cases, we are, in effect, now asked to say definitely whether the American Bank case is overruled.

This cause was tried below on an agreed statement of facts which may be condensed into a paragraph. Both the appellant and respondent banks were organized under the laws of this State, and were located on opposite sides of the street at Republic in Greene

County. Neither was a depositor nor carried any kind of an account with the other. But for years it had been their daily custom. to clear or exchange direct checks and other items which each had cashed or otherwise acquired for collection, drawn against the other; and for the bank which had the lesser total to give a draft to the other for the balance due on the day's clearings. On April 17, 1928, a balance of $242.74 was due the appellant bank, and the respondent bank accordingly gave the draft in suit for that amount drawn against a Springfield (Missouri) bank. The items presented for clearance by the appellant bank, and paid, in part, by the draft, were all checks on the respondent bank, and they were all good—that is, the drawer of each check had a balance to his credit in the respondent bank sufficient to pay the check; and the checks were in fact charged by the respondent bank later that day against the accounts on which they were drawn. When the respondent bank closed its doors at the end of the day it had in its vault and in solvent correspondent banks, particularly in the aforesaid Springfield bank, more than enough money to pay the draft, but the draft was not paid when it reached the Springfield bank in due course the next day, April 18, because the drawer, the respondent Republic State Bank, in the meantime had closed and ceased to do business. It is not claimed the officers of the respondent bank knew it was insolvent when they issued the draft.

We shall not attempt to set out the facts in the Poplar Bluff case, 275 S. W. 579, 281 S. W. 733, 313 Mo. 412, 47 A. L. R. 754, and the Federal Reserve Bank case, 275 S. W. 583, 282 S. W. 706, 314 Mo. 1. Both must be read to get a full understanding of the points involved here. It will be sufficient to say they hold, in substance, that when items drawn on or payable at a bank are sent to that bank for collection, the bank is thereby made the agent of the forwarder to collect the items from itself and to remit the proceeds. And if items drawn against the bank (such as drafts) are accepted, or items payable at the bank (such as checks) are charged to the accounts of the makers, the bank thereafter stands seized of the proceeds thus collected as trustee for the forwarder. And even though the bank is further authorized by the contract under which the collection was forwarded, or by custom, to remit the collection proceeds in exchange, usually by draft, yet if the bank fails before the draft is paid, the owners or forwarders of the items will have a preferred claim against the assets of the failed bank. Both the Poplar Bluff case and the Federal Reserve Bank case, following and quoting from Federal Reserve Bank of Richmond v. Peters, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742, hold that when the collecting bank remits the collection proceeds by draft, the draft operates as an equitable assignment *pro tanto* of whatever funds the issuing bank may have on deposit with the drawee bank.

Further, both cases concede that when the forwarding and collecting banks· have a "reciprocal accounts" arrangement, whereby the former allows the latter to credit the proceeds of collections to an account in its (the forwarding bank's) favor, the relation created is merely one of debtor and creditor, not of principal and agent or trustee, and no preferred claim could be granted for collection proceeds thus on deposit in the hands of the collecting bank if it should fail.

In the American Bank case, 255 S. W. 943, the facts were almost exactly like those before us now: that is to say, in that case two banks in the same town cleared checks and other items directly with each other, without sending them for collection through the mail. Neither bank ever had been a depositor in the other. On the day one bank failed it had given the other a draft for the balance due on clearings, which would have been good if the drawer bank had not failed. The payee bank sought to establish the amount of the draft as a preferred claim against the assets of the failed bank, contending the items in its clearing list were presented across the counter of the failed bank for collection from itself, and that the latter bank in honoring the items and issuing its draft for the balance due thereon acted as *agent and trustee* for the presenting bank. The St. Louis Court of Appeals vigorously disapproved this contention saying the items were presented for *payment,* not for collection, and that when the presenting bank accepted the draft of the payee bank in settlement of the balance due a debtor and creditor relation was created between the two banks which gave the presenting bank no right to a preferred claim. We shall revert to this question later. All we care to say here is that there was clearly no "reciprocal accounts" relation between the two banks. Also, it is to be noted the case differs from the Poplar Bluff and Federal Reserve Bank cases in that in the latter the items were sent through the mail for collection and remittance, whereas in the American Bank case the two banks concerned dealt directly with each other.

The last case referred to in the opinion of the Springfield Court of Appeals in the instant Bank of Republic case is Farmers' Bank of Bowling Green v. Cantley, 16 S. W. (2d) 642. The facts in that case were very much like those in the American Bank case and this case. Two banks in Bowling Green cleared directly with each other and on a certain day one bank gave the other a draft for the balance due and failed to open the next morning. For this reason the draft was not paid and the payee bank thereupon asked a preferred claim for the amount thereof against the assets of the failed bank. The·circuit court denied the preference, but on appeal the St. Louis Court of Appeals receded from the position it had taken in the American Bank case and reversed and remanded the cause on authority of the Poplar Bluff and Federal Reserve Bank cases.

The opinion in the Bowling Green case holds (and correctly so) that no reciprocal accounts relation existed between the two banks there involved, and construes the Poplar Bluff case as holding that whenever that arrangement does not exist the two banks stand in the relation of principal and agent or *cestui que trustent* and trustee after the collection is effected. The fact is noted that in the Poplar Bluff and Federal Reserve Bank cases the items were sent for collection through the mail, whereas the two Bowling Green banks dealt directly with each other over the counter; but it is held this difference did not alter the liability of the failed bank, since it was duty bound to take up its checks by the payment of cash, and the mere fact that it issued to the presenting bank a *draft* for the clearing balance due, did not relieve it of its trust obligation if the draft was not paid. This same question is discussed in the Court of Appeals opinion in the instant Bank of Republic case.

So much for the decisions referred to in the opinion of the Springfield Court of Appeals in this case. There are also two late decisions by the Kansas City Court of Appeals which follow (one of them rather reluctantly) the Poplar Bluff and Federal Reserve Bank cases, holding that when a bank receives items for collection and issues a draft to remit the proceeds thereof, a preferred claim will be allowed if the bank fails before the draft is paid in due course, provided there were and are sufficient funds on hand to pay the same. In the first of these cases, State Farmers Mutual Tornado Ins. Co. v. Cantley, 222 Mo. App. 839, 6 S. W. (2d) 970, the forwarder of the collections *expressly instructed* that the proceeds be remitted by draft. In the other case, Carson Nat. Bank v. American Nat. Bank, 34 S. W. (2d) 143, two banks in the same town dealt directly with each other and the presenting bank accepted from the paying bank a draft for the clearing balance due, as was done in the instant case.

Leaving out of account for a minute instances when a bank issues a draft in remittance of *collections*, the rule is well established that where a draft is *purchased* from a bank the consideration paid therefor passes into the general assets of the issuing bank and the relation created between the holder and the bank is merely that of debtor and creditor—if the transaction is free from fraud, that is, where the bank drawing the draft is not known by its officers to be insolvent at the time and has sufficient credit with the correspondent to meet the draft.

Neither, except in special circumstances, does the draft operate as a legal or equitable assignment *pro tanto* of funds in the hands of the drawee available for the payment thereof, at least before acceptance. (We express no opinion as to the effect of drafts drawn for the entire credit with the drawee.) A bank draft or check is

simply a bill of exchange payable on demand (Secs. 2754, 2813, R. S. 1929; 3 R. C. L. 831, sec. 4; 8 C. J. 33, sec. 4); and with respect to bills of exchange and checks our Negotiable Instrument Law expressly negatives that they shall operate as assignments (Secs. 2755, 2817, R. S. 1929). Such was the rule in this State before that law was enacted. [Bank of Commerce v. Bogy, 44 Mo. 13, 100 Am. Dec. 247; Dickinson v. Coates, 79 Mo. 250, 49 Am. Rep. 250; Merchants' National Bank v. Coates, 79 Mo. 168; Coates v. Doran, 83 Mo. 337; Kline & Aitken v. Cantley (Mo. App.), 34 S. W. (2d) 526; McEwen v. Sterling State Bank, 222 Mo. App. 660, 5 S. W. (2d) 702; Carmichael v. Tishomingo Banking Co. (Mo. App.), 191 S. W. 1043, 1046; Kellogg v. Citizens Bank of Ava, 176 Mo. App. 288, 292, 162 S. W. 643, 644; Pennell v. Ennis, 126 Mo. App. 355, 362, 103 S. W. 147, 149; Cases cited in Missouri Digest under "Assignments," sec. 49.]

. A few text-writers and courts hold an equitable assignment *pro tanto* takes place, as between the drawer and the payee or holder, though not affecting the drawee until after acceptance (See 1 Daniel on Negotiable Instruments (6 Ed.), secs. 20, 23, pp. 22, 26); but the weight of authority, and reason, we think, are to the contrary. [5 C. J. 916, sec. 81; L. R. A. 1916C, 166, note; 43 L. R. A. (N. S.) 100, 110, notes; 5 A. L. R. 1167, note; 50 A. L. R. 403, note.] Similarly, it is almost universally held wherever the point has been up for decision that the purchaser of a bank draft, sold without fraud, is not entitled to a preferred claim for the amount thereof if the bank fails before the draft is paid by the drawee. [7 C. J. 751, sec. 547; Spiroplos v. Scandinavian-Am. Bank, 116 Wash. 491, 199 Pac. 997, 16 A. L. R. 181; Legniti v. Mechanics & Metals Nat. Bank, 230 N. Y. 415, 130 N. E. 597, 16 A. L. R. 185, 190, note; First Nat. Bank v. Farmers' State Bank, 120 Kan. 706, 244 Pac. 1039, 44 A. L. R. 1531, 1535, note; 57 A. L. R. 1168, note.] The same rule is applied to cashier's checks. [73 A. L. R. 59, 66, note.]

In short, the sale of an ordinary bank draft is nothing more than a sale of the bank's credit with its correspondent bank against which the draft is drawn, and is not an assignment *pro tanto* of whatever funds the drawer bank may have on deposit with the drawee bank at the time. It is the settled law in this State that the relation between a bank and its depositors is one of debtor and creditor. [State ex rel. Am. Central Ins. Co. v. Gehner, 320 Mo. 901, 906, 9 S. W. (2d) 621, 623.] The entire title to funds deposited passes to the bank and a corresponding indebtedness is created in favor of the depositor. Hence, when one bank deposits money in another and draws drafts against the latter, the drafts cannot assign to the payee any equitable title or lien in or against the *funds* on deposit, for the drawer, itself, has none. The most that could be said in any event

is that the *debt* due from the drawee bank to the issuing bank is assigned *pro tanto*.

The view of those who contend in favor of the equitable assignment theory is that although the drawee is unaffected by the issuance of the draft unless he accepts it, yet if before the draft is cashed the drawer bank fails, when the assignee or receiver thereof takes over as one of its assets the indebtedness due from the drawee bank, equity will regard the amount called for by the draft as dissevered from the debt and treat that part as a separate asset held in trust by the receiver for the draft owner; and a corresponding equitable interest will be fastened on any funds representing the indebtedness, whether they remain in the drawee bank or reach the hands of the receiver and are mingled with the general assets of the failed bank. By this devious reasoning the holder of the draft is given a direct equitable interest in *funds* on deposit with the drawee bank when he clearly would have had none if the drawer bank had not failed, and the drawee is made to answer for moneys in its hands, when confessedly under the statute it was not bound by the draft since there had been no acceptance thereof. We cannot subscribe to this doctrine.

Furthermore, there is nothing in the nature of the transaction investing the holder of a draft with superior equities. Let us suppose A and B step up to a bank counter together. A deposits $100 and receives a deposit slip. The title to the money passes to the bank and the bank contracts that *it* will pay to him or his order on demand the amount of the deposit. [Secs. 2813, 2818, R. S. 1929; Farmers & Traders Bank v. Harrison, 321 Mo. 815, 821, 12 S. W. (2d) 755, 757; Allen Grocery Co. v. Bank of Buchanan Co., 192 Mo. App. 476, 487, 182 S. W. 777, 781.] On the other hand B pays the bank $100 and takes a draft therefor. The title to the money passes to the bank and the bank contracts that a *third person*, the drawee, will pay to him or his order on demand the amount of the draft; or if the draft be dishonored and proper steps taken, that it, the issuing bank, will pay the amount. [Secs. 2689, 2779, R. S. 1929; 8 C. J. sec. 84, pp. 62, 63; 3 R. C. L. sec. 356, p. 1140.] Both transactions are based on the credit of the issuing bank, and there is no sound reason why, if that bank fail before the deposit is withdrawn and the draft paid, that A, the confiding depositor, should be allowed only a common or pro-rating claim, and B accorded a preferred claim for the full amount of his debt.

If it be true then, that the issuance of a draft in remittance of *collections* does operate as an assignment *pro tanto* of funds in the hands of the drawee, and leaves the drawer bank still a trustee of the collection proceeds in its hands until the draft is paid, it necessarily follows that such trust relation does not grow out of the nature and effect of the draft itself, but arises out of the relation between the par-

ties—that is to say, the circumstance that the issuing bank acquired possession of the paper as agent, for the sole purpose of collecting it and remitting the proceeds, thereby becoming a trustee with respect to funds collected thereon until remitted in money or its equivalent to the forwarder. Two late cases decided by the Kansas City Court of Appeals so hold, and we think they are correct. [In re Wells-Hine Trust Co., 32 S. W. (2d) 1093; Carson Nat. Bank v. American Natl. Bank, supra, 34 S. W. (2d) 143, 148.]

There seems to be some inconsistency in saying that when a man purchases a bank draft payable to himself he becomes only a common creditor of the issuing bank if it fail before the draft is paid, but that if he sends an item to the bank for collection and directs the bank to remit the proceeds to him by draft he becomes a preferred creditor. What one does by agent is the same as if done by oneself. If he authorizes the bank to remit a collection by draft there is good ground for saying he has authorized the bank as his agent to use the collection proceeds in purchasing a draft from itself for that purpose. And the authorities over the country are not by any means all in harmony with the holding in the Poplar Bluff and Federal Reserve Bank decisions. [47 A. L. R. 761, note; 42 A. L. R. 754, note; 24 A. L. R. 1152, note; 2 Patton's Digest (1928) sec. 1600a; 1 Patton's Digest (1928) secs. 1599, 1600; 1 Morse on Banks and Banking (6 Ed.) sec. 248, p. 600.]

But there is another rule that a collection agent has not, unless specially authorized, authority to receive payment in anything but cash. [3 R. C. L. sec. 245, p. 616; 7 R. C. L. sec. 276, p. 614.] This rule is invoked by some of the decisions from other jurisdictions in applying the doctrine announced in the Poplar Bluff and Federal Reserve Bank cases; and logically such must be its basis. And while these cases declare the trust relation exists notwithstanding the collecting bank is authorized by contract or custom to remit collections in exchange they reach this conclusion by treating the authorization only as conditional. In other words, the forwarding bank receives and accepts the draft sent by the collecting bank merely as a provisional credit, not being bound if the paper is dishonored, in just the same way as a bank permits a foreign check to be deposited for collection and gives the customer conditional credit therefor, the check being charged back if it fails to go through It seems far-fetched to say such collecting transactions proceed on the basic theory that items are to be remitted for in cash when we know how universal is the custom to clear and remit by exchange, and that the nation's business is largely done on a credit basis. But the fiction adds to the liquidity of commercial paper passing through banking channels, facilitates collections and minimizes the expense. These considerations must be taken as justifying it. Whatever doubt there may have been about the doctrine before, was put at rest in

this State by an act passed in 1929, Laws 1929, p. 205, now Secs. 5565 to 5575, Revised Statutes 1929, particularly the last mentioned section. These statutes have no application to this case, as they were passed after it·arose, but they amount to legislative approbation of what, in general, the Poplar Bluff and Federal Reserve Bank cases hold, and fix the rule for the future.

From the foregoing it is apparent that the trust relationship sustained by the collecting bank to the forwarding bank grows out of the agential status of the former. We think the American Bank case (whether it was overruled or not) was right in saying that where one bank presents to another directly across the counter items drawn on or payable at the latter, the paying bank is *not* thereby made the agent of the presenting bank for the collection of the items from itself. The items are simply presented for payment just as any holder might take a check to the bank on which it is drawn and present it for payment. The parties deal at arm's length. The situation is entirely different from one where an item is sent to a bank through the mail or otherwise and the bank is entrusted with the custody thereof and the remittance of the proceeds.

But if the presenting bank was itself agent for the owners of the items, as where checks are deposited in a bank for collection and by that bank are presented to the bank on which they are drawn, the result is the same, for in that case the paying bank would be bound to take notice of the limited authority of the presenting bank under the rule requiring it to collect the item in cash, or to accept a draft only conditionally. In this instance the items presented by the appellant Bank of Republic were items it held for collection. The agreed statement of facts so recites. It did, therefore, act as agent in presenting the items to the respondent Republic State Bank, and in accepting the draft from the latter must be deemed to have done so only conditionally. A preferred claim should be allowed.

The question whether the Poplar Bluff case overruled the American Bank case becomes largely academic (as to future controversies) in view of our recently enacted statute; but a reading of the opinion will show beyond doubt that it did, by clear implication, and that the statement in the Federal Reserve Bank case to the contrary is erroneous.

The judgment is reversed and the cause remanded with directions to allow the appellant's claim as a preferred claim. All concur.