STATE FARMERS MUTUAL TORNADO INSURANCE COMPANY, RESPONDENT, v. S. L. CANTLEY, COMMISSIONER OF FINANCE, ET AL., APPELLANTS.*

Kansas City Court of Appeals. March 5, 1928.

---

*Corpus Juris-Cyc References: Assignments, 5CJ, section 81, p. 918, n. 50; section 86, p. 925, n. 85; Banks and Banking, 7CJ section 301, p. 625, n. 76; section 480, p. 727, n. 97; Courts, 15CJ, section 308, p. 920, n. 8.

*M. D. Aber* for appellant.

*C. H. Harrison* for respondent.

BLAND, J.—This is a suit brought by plaintiff against the Farmers Bank of Leeton, Missouri, and the finance commissioner in charge of said bank. The purpose of the action is to have certain funds in the hands of the commissioner in charge of the assets of the bank declared to be entitled to a preference over the claim of general creditors. The court allowed plaintiff's claim as a preferred one in the sum of $616.02, being the amount of a certain draft issued by the cashier of the Farmers Bank of Leeton to plaintiff, together with the further sum of $3.20, being the protest fee and expenses incurred by plaintiff by reason of the non-payment of the draft. Defendants have appealed.

The facts show that plaintiff is a mutual tornado insurance company having assets of about eighty-six or eighty-seven millions of dollars, and policyholders scattered over the western part of the State. Assessments due plaintiff from its policyholders were collected through local banks in the following manner: Plaintiff would send to the bank a list of policyholders together with a letter explaining how the collection of the assessment should be made. Plaintiff would also send a notice to the policyholders notifying each of them of the amount of the assessment due and at what bank it should be paid. Plaintiff on July 1, 1925, and for twenty years prior thereto, used the Farmers Bank of Leeton as a collection agent to collect assessments from policyholders in and about the town of Leeton. It seems that one of these lists would be sent to the defendant bank about every two years.

Plaintiff on July 1, 1925, made an assessment as usual and sent a list containing the name of one hundred policyholders in and about Leeton to the defendant bank. Enclosed with this list was a letter stating that when a policyholder came in to make payment, the bank should see that the notice sent by plaintiff to him corresponded to the name and policy number on the list; that the policyholders be given credit "in the column (on the list) for that purpose," and not to accept from any of those whose name did not appear upon the list unless they brought their notices with them so that the information as to the right policy number and the amount would be furnished. The letter further instructed the bank to—

"Give time enough for all who will come in and pay (usually three weeks). Some of course will not pay and we should have the list as soon as possible, so we can send out second notices. Re-

turn list together with the draft for amount collected, less your 2 per cent commission."

Plaintiff was unable to get any report from defendant bank of the collections made by it, although plaintiff repeatedly wrote it from plaintiff's home office at Cameron, until October 3, 1925. On this date the bank wrote plaintiff that the total collections had been $628.59 and sent plaintiff a draft for that amount less two per cent collection charges. This draft, for $616.02, was drawn by the Leeton bank upon its correspondent bank, the National Bank of Commerce of St. Louis. It was admitted at the trial that at the time the draft was drawn there was enough money belonging to defendant bank in the St. Louis bank to pay this draft. On the receipt of the draft by plaintiff it was deposited to the account of plaintiff in the Bank of Cameron but before it reached the National Bank of Commerce of St. Louis defendant bank closed its doors and went into the hands of the finance commissioner and the draft was not paid.

The evidence shows that plaintiff had never formally opened an account with defendant bank and had no business with it except the sending of the lists in question. There was no specific instructions to the defendant bank as to how to handle the money paid in by the policyholders upon their assessments, that is to say, no directions as to in what manner the money should be kept in defendant bank pending its forwarding to plaintiff. The banks who made these collections "kept a list of that and when they are through they added up the list and send us (plaintiff) a draft." However, the books of the defendant bank showed an account with the bank in the name of plaintiff by which the money collected by these lists were shown as credits to plaintiff.

It is insisted that the court erred in allowing plaintiff's claim as a preferred one for the reason that the relationship of debtor and creditor and not that of principal and agent existed between plaintiff and the defendant bank after the collections were made and deposited to the account of plaintiff in the bank, and therefore the status of plaintiff was that of a general creditor when the defendant bank failed. Although there seems to be much logic in this contention, we need not pass upon it for the reason that the draft drawn by the Bank of Leeton on the National Bank of Commerce of St. Louis on October 3, 1925, for $616.02 amounted to an equitable assignment of defendant bank's funds in the St. Louis bank in favor of plaintiff for the amount of the draft. [See Federal Reserve Bank v. Millspaugh, 282 S. W. 706, 709.]

It is well settled in this State by a host of authorities among which there is no dissent. that the giving of a check or draft for a part of the fund in the hands of the drawee is not an assignment

of the funds *pro tanto* in the absence of an express acceptance or certification of such check by the drawee and gives the payee no lien upon the fund. In the case of Loomis v. Robinson, 78 Mo. 488, it was held that an assignment of part of a judgment made without the consent of the debtor was void in law and equity. The reason given for this holding is that the debtor has a right to pay his debt *in solido* and to refuse to be subjected to suits by several claimants which might result if the law compelled him to recognize each order as an assignment *pro tanto* of the fund. [See McEwen v. Sterling State Bank, No. 16206, decided by this court but not officially reported, and cases cited; see, also, Sec. 975, R. S. 1919, and 5 C. J. 916, 917, 918.] However, some authorities hold that as between the drawer and payee of the check or draft, the check or draft operates as an equitable assignment *pro tanto* of the fund. [2 Daniels on Negotiable Instruments (6 Ed.), 1852.]

If this were a contest between plaintiff, the payee in the draft, and the National Bank of Commerce of St. Louis, plaintiff would not be entitled to recover unless the check was for the entire fund in the hands of the Bank of Commerce, and for the purpose of this case it may be admitted that the draft did not represent the entire account of the Bank of Leeton with the National Bank of Commerce of St. Louis. However, this is not a contest between plaintiff and the National Bank of Commerce of St. Louis but must be taken as one between plaintiff and the Bank of Leeton as the commissioner of finance could obtain no greater title to the assets. of that bank, which included deposits that it had in the National Bank of Commerce at St. Louis, than had the Farmers Bank of Leeton. [2 Daniels on Negotiable Instruments, pp. 1851, 1852, note 67, 68; Roberts v. Austin Corben Co., 26 Iowa, 315, 327, 328.] As between plaintiff on the one hand and the commissioner of finance and the latter bank on the other, the drawing of the draft, as before stated, was, according to the latest decision of our Supreme Court, an equitable assignment *pro tanto* of the funds of that bank in the National Bank of Commerce of St. Louis.

The holding of the Supreme Court in the case of Federal Reserve Bank v. Millspaugh, supra, that, as between the payee of the draft and the commissioner of finance in charge of the bank which drew it, there was an equitable assignment of the fund to the extent of the draft and therefore the payee is entitled to a preference, is contrary to previous holdings of the Supreme Court including Dickinson v. Coates, 79 Mo. 250, Merchants' National Bank v. Coates, 79 Mo. 168, which cases and others were not mentioned in the Millspaugh case, and, in fact, contrary to perhaps the greater weight of authority in this country upon the question. [See Fourth Street Bank v. Yardley, 165 U. S. 634;

Florence Mining Co. v. Brown, 124 U. S. 385; Laclede Bank v. Schuler, 120 U. S. 511; Lunt and Cook v. The Bank of North Amer., 49 Barbour's Rep., 221; Reviere v. Chambliss, Admr., 120 Ga. 714; Covert v. Rhodes, 48 Ohio State 66.] However, we are required to follow the last decision of the Supreme Court on the question and therefore conclude that the trial court properly allowed a preference in this case for the amount of the draft. We are unable to see upon what theory the expenses incurred in an effort to collect the draft can be allowed as a preferred claim. The judgment, therefore, is affirmed for only $616.02 and reversed as to the balance.

*Arnold, J.,* concurs; *Trimble, P. J.,* absent.