JOHN FLETCHER, RESPONDENT, v. S. L. CANTLEY, COMMISSIONER OF FINANCE, IN CHARGE OF THE NEW EAST PRAIRIE BANK, APPELLANT.—47 S. W. (2d) 217.

Springfield Court of Appeals. March 7, 1932.

*George W. Kirk* for appellant.

*John Fletcher* for respondent.

SMITH, J.—This is an action to have allowed as a preference a claim based upon the issuance of a cashier's check for the transmission of money by the New East Prairie Bank, of East Prairie, Missouri.

John Fletcher, plaintiff was a regular depositor of the New East Prairie Bank, and on Saturday, November 15, 1930, about 3:30 P. M., he issued a personal check to the bank against his account in said bank and was given a cashier's check, dated November 15, 1930, for $256.06, payable to the Home Insurance Company.

The personal check for $256.06 was charged against the checking account of the claimant on Monday, November 17, 1930, and the amount thereof was deducted from the account of the claimant.

The cashier's check was that day forwarded to the Home Insurance Company, in New York. The bank closed its doors on November 28, 1930, and was placed in the hands of S. L. Cantley, Commissioner of Finance of the State of Missouri. The cashier's check had not cleared on November 28, 1930, and the claimant being compelled to reimburse the company, a claim for preference was filed by John Fletcher, on February 18, 1930, with the Deputy Commissioner in charge of said New East Prairie Bank, and within the four months' time allowed by statute for filing claims.

The deputy commissioner approved said claim on July 16, 1931, as a common claim against the bank for $256.06.

At the July term of circuit court a trial was had before the judge of the circuit court of Mississippi county, and judgment for preference was rendered in favor of the claimant and against the bank in the sum of $256.06.

A motion for a new trial was filed and overruled and the defendant appealed from said judgment.

There is no controversy over the pleadings, nor is there much difference as to the facts. The principal controversy here is, whether or not, under the facts, the circuit court erred in allowing this claim as a preferred claim. The point was raised in motion for new trial, and is properly before us.

Under his points and authorities the defendant contends that plaintiff is not entitled to have his claim allowed as a preferred claim, first, because the relationship established by the purchase of a cashier's check is that of debtor and creditor, and not that of principal and agent, and second, that the burden was on the plaintiff to show that his funds came into the hands of the receiver of the bank, and that there was no such showing in this case.

Taking the last of these propositions first, we think the testimony does show that the funds the bank received for the cashier's check in question did go into the hands of the receiver. When the receiver was on the stand, the trial court asked him the following questions and he answered as herein shown:

"Do you know whether or not there was money enough on hand and in this bank at the time you took charge of it to pay all of these cashier's checks? A. Yes, sir, there was; that is my recollection; I think the books would have shown these cashier's checks could have been paid. I might add, if it please Your Honor, there were letters presented to the bank with checks to be paid that would have more than wiped out the accounts had they been paid when presented, that were not paid.

"Q. That would be equivalent to saying there was money enough to pay the cashier's checks because a lot of other checks and demands had come in and not been paid? A. That's right."

Following these questions and answers the witness did testify as to a check for $4000 coming in and some letters presented to the bank with checks to be paid, that would have more than wiped out the cash, had they been paid, but we think the proof was sufficient to show that there were sufficient funds to pay the cashier's checks, and that these funds went into the hands of the receiver of the bank.

This leaves us then, the determination of the question as whether or not the transaction here created the relation of debtor and creditor solely as a general creditor, or whether under the facts and law the plaintiff is entitled to preference.

Both sides in their argument concede that if the plaintiff had obtained a draft for the $256.06 payable to the Home Insurance Company in New York, and if the bank issuing the draft, then sufficient funds in the bank on which it was drawn to pay the draft, then the claim would be entitled to preference. But here the plaintiff got a *cashier's check* payable to the Home Insurance Company to be paid

out of the funds in that bank when presented properly endorsed by the payee, and there were sufficient funds left with the bank by plaintiff to pay the cashier's check. Does that make a difference?

The proof in this case clearly shows that on November 15, 1930 the plaintiff was a depositor, and went on that day to the bank and issued his check for $256.06 on his account in the bank in which there was enough money to pay the check, and his check was honored and charged against his account and he received a cashier's check, payable not to himself but to the Home Insurance Company in New York, and on that day mailed the cashier's check to the payee.

In order to show how the funds for cashier's checks were handled by the bank, we quote here the testimony of J. R. Presson who had formerly been the cashier of the New East Prairie Bank. He testified as follows:

"That his occupation was that of banking; that he had had twenty-four years experience in the banking business; that he held the position of assistant cashier of the First Security State Bank of Charleston, Missouri, at this time; that he had been engaged as a bank cashier for twenty-two and one-half years; that he had considerable experience in the issuing of drafts and cashier's checks; that the money received by a bank for a cashier's check is placed on a book known as a cashier's account and is held for paying the outstanding cashier's checks issued by said bank; that this cashier's fund or account is used solely for the paying of outstanding cashier's checks, said cashier's account being debited with the amount of the cashier's checks as they come into the bank, no other checks or debits being charged to this account; that one who has purchased a cashier's check cannot stop payment on the same without giving the bank an indemnifying bond to guarantee the said bank against loss; that the usual practice is the same with cashier's checks and drafts, in that regular customers of the bank are not charged a fee for their issuance, but those who are not regular customers of the bank are charged such a fee in the issuance of both mediums of exchanges.

"Q. In your practice as cashier, the operation of a draft and a cashier's check, so far as you are concerned as a banker is the same thing for the transmission of money? A. Well, it is not the same thing, but it is meant for transferring money; along the same line, but it is not the same as a draft.

"Q. You may tell the court what a bank draft is? A. A draft is our check drawn on our corresponding bank in New York, Chicago, St. Louis or anywhere we might carry our account.

"Q. If a customer comes to the bank and asks for a draft you take up your pad of bank drafts and issue your check or draft on a corresponding bank where you have a fund? A. Yes, sir.

"Q. Whereabout is that draft paid? A. Paid at this bank on which it is drawn.

"Q. Paid out of your funds in the corresponding bank? A. Yes, sir.

"Q. Now, in what bank is a cashier's check paid? A. Drawn on your own bank.

"Q. In what fund is that cashier's check charged against? A. Cashier's account.

"Q. I will ask you if there is any other check or draft or debit slip that the purchaser of a cashier's check can bring to your bank and have charged against that cashier's fund except this cashier's check? A. No, sir.

"Q. In other words, in your experience, this cashier's fund is kept intact for the sole purpose of transmitting to the payee of cashier's checks? A. Well, as I said before, it is kept for the purpose of paying cashier's checks as they come in.

"Q. And nothing else? A. Thats all.

"Q. I believe you stated that the funds used to pay a cashier's check were kept separate and intact until the return of the check? A. Yes, sir.

"Q. In the case that cashier's check should never be returned what would become of the fund? A. That would still be kept in that account as long as the bank was in existence.

"Q. If that check was never returned the funds would be kept in a separate account as long as that bank existed? A. Yes, sir.

"Cross-examination by defendant:

"Q. Mr. Presson, the whole matter of this cashier's fund is a bookkeeping transaction? A. Yes, sir.

"Q. Pure and simple? A. Yes, sir.

"Q. There is no segregation of the money deposited, or if checks are given on a personal account there is no segregation of the amount of that check from the depositor's demand deposit is there? A. No, if we take in cash it would go in the cash drawer with the rest of it.

"Q. It is all commingled together? A. Yes, sir.

"Q. If a person would come into this bank and plank down one hundred dollars cash and buy with it a cashier's check, that one hundred dollars would be commingled with all other moneys of your bank, wouldn't it? A. Yes, sir.

"Q. The matter then, when you speak of a segregation of your cashier's fund, you mean then that in your bookkeeping you segregate that account from the liabilities of your bank, don't you? A. Sure, that is the idea, just a bookkeeping proposition; that the record of cashier's checks and drafts issued are kept in the same register, but under separate bookkeeping headings; that when a draft is issued

an entry of the same is made on the draft register; that a draft issued by a bank is drawn on a fund which the issuing bank has in their corresponding bank; that the local bank keeps a record of the amount of money that they have on deposit in their corresponding bank and at the end of each day, they balance this account and deduct the amount of drafts issued against the same; that in the case of cashier's checks, the cashier's check is entered on a cashier's check register after the issuance of the same, but is not charged out of any of the funds or accounts in said bank until the cashier's checks comes back into the bank after making its circuit around through other banks and clearing houses; that the local bank debits and credits the cashier's fund daily in accordance with checks issued and checks actually paid out of said fund; that a cashier's check is handled like a personal check out of a man's personal account; that banks prefer to issue cashier's checks rather than drafts for the reason that the bank has the use of the money while the check is going and coming; that in the course of a year this amounts to a considerable sum of money to the bank; that cashier's checks are not paid by the corresponding banks in the cities.

"Re-direct examination by plaintiff:

"That in keeping a record of cashier's checks, both names are listed, the purchaser and the payee, that if the purchaser of a cashier's check came to the bank and said check has not been returned, the purchaser would have to put up a bond before the funds could be taken out with which said check was purchased, but that if he had never sent away said cashier's check but returned it and applied for the money, the bank would take his endorsement and pay him the money even if it was unendorsed by the payee; that a draft is issued by the issuing bank on another bank; that the issuing bank gives the correspondent bank credit for all drafts issued at the end of the day and makes deposits from time to time in the correspondent bank, just the same as an individual would make a personal deposit in his home bank."

"Re-cross examination by defendant:

"That it takes about four days for a cashier's check to go from a local bank and clear through the St. Louis Clearing House and return to the local bank; that the time involved in the clearance of a cashier's check would depend on the number of banks that handled it; that plaintiff's Exhibit No. 2 shows that it cleared through about four banks or clearing houses; that said cashier's check came through the Corn Exchange Bank and Trust Company of New York, after being endorsed by the Home Insurance Company of New York, that it cleared through the Federal Reserve Bank in St. Louis; that in his opinion it would require eight or ten days for this particular

cashier's check to go to the Home Insurance Company in New York and return back to the New East Prairie Bank through the above clearing mediums; that the New East Prairie Bank during these eight or ten days had the benefit and use of the amount of this check, $256.06; that if Mr. Fletcher had purchased a draft they would not have had the use of the said funds for that time; that this cashier's check issued on November 15th, should have cleared through the New East Prairie Bank prior to November 28th; that said cashier's check must have been held in the office by some one along the line an unreasonable length of time; that if Mr. Fletcher had given his personal check to the Home Insurance Company, drawn on his personal account for $256.06, instead of a cashier's check, that it would have come back and have come through the same route or process claimant's cashier's check went through, would have come back and been paid out of his personal account very much like the cashier's check in question was paid out of the cashier's fund, and that it would take approximately the same amount of time in making the circuit back to the New East Prairie Bank; that a cashier's check is an order upon the bank to pay on demand and whenever anybody presents said cashier's check and makes demand for the money, they are entitled to it; that a cashier's check is very similar to a certificate of deposit; that in both instances they are neither one payable except by demand made on the issuing bank; that a certificate of deposit is usually made payable on demand in a specified time and is carried on the books of the bank practically the same as a cashier's check; that Mr. Presson was formerly the cashier of the New East Prairie Bank, resigning from this position on January 1, 1930; that he was not familiar with the method of issuing drafts and checks of this bank in November, 1930.''

''Examination by the court:

''That he was not cashier of the issuing bank at the time the check was issued; that is not customary for the bank to explain to their customers the difference between drafts and cashier's check; that ninety per cent of the people who transmit money do not know the difference between a draft and a cashier's check; that it is to the advantage of the bank to give a purchaser a cashier's check rather than a draft; that it is a money making proposition for the bank to do so.''

Witness E. L. Griffin, the special deputy commissioner in charge of the liquidation of the New East Prairie Bank, testified that he found on the register of cashier's checks, a record of the cashier's check in question charged to the cashier's checks account, with the number, showing its issuance to the Home Insurance Company that the purchaser was John Fletcher, and the amount was $256.06, and the record did not show that it had been paid.

1068

The parties assert that the particular question here especially regarding cashier's checks, has never been passed on by the courts of this State, and we do not find any case exactly on all fours with this. Both sides do cite us authorities in other States, which are not exactly in point, because of different facts, yet they are instructive and persuasive.

The defendant states his position concisely in this language: "It is our position that claimant is not entitled to a preference in this case for the reason that the relationship established by the purchaser of a cashier's check, is that of debtor and creditor, rather than that of principal and agent."

The defendant's position might be correct if the cashier's check was made payable to the purchaser, a question we are not deciding here, because this cashier's check was made payable to a third party and not to the purchaser.

In this instance the purchaser had no further control of the cashier's check until it was endorsed back to him by the payee after he had paid the payee. He had no further control of the money in the bank, according to the testimony heretofore quoted. It seems to us that the plaintiff is in exactly the same position that he would have been in if he had taken $256.06 in currency to the bank and received the cashier's check payable to the insurance company, or if he had left the cash there with directions to the bank to send it to the insurance company, and the bank had so received it.

Here is, in effect, what happened; the plaintiff went to the bank and agreed with the bank to leave with it $256.06 to be sent by the bank to the Home Insurance Company in New York, and the bank agreed to accept it and did accept it in trust for the Insurance Company, and as the agent of the plaintiff. The plaintiff did not take the cash into the bank, but what happened is equivalent to this. The plaintiff was a depositor in that bank, and the relation of debtor and creditor existed between that bank and him. The bank owed him $256.06. He gave a check to the bank for $256.06 on his account and the bank honored it and took that amount out of his account, and at that particular time the relation of debtor and creditor changed. The bank as debtor no longer owed him as a creditor. The transaction between the parties were just the same in effect as it would have been if the bank had gathered up out of its til and handed to him out of the paying window the $256.06 in cash, and he had stepped over to a receiving window and handed the exact amount of money to a representative of the bank at that window and asked the bank to send it to the Insurance Company. Suppose he had done that, what would have been the relation then? The bank would have been the agent of the plaintiff, and when the bank accepted the money and agreed to send it, the bank would be holding the money in trust.

There would have been no relation of debtor and creditor existing between the bank and the plaintiff, such as had existed before he drew his money out of the checking account, for his checking account would have been closed, or at least to the extent of the $256.06 that he had drawn out. His relation to the bank would have been changed, and the bank's relation to him would have been changed. Before the bank owed him; now, the bank is acting as his agent. Before the bank owed no duty to the insurance company, now, it holds funds in trust for it. It kept the funds, it had undertaken as a matter of convenience to itself and for compensation to itself in a charge made, or in having a pleased customer, to transmit the money to the insurance company by cashier's check rather than send the currency direct. As a benefit to itself, and incidentally a benefit to the general creditors of the bank, it took the plaintiff's money and placed it in its vaults and charged itself up under the head of cashier's checks account with that amount of money, and expected to hold it and use it until that cashier's check went its round, and then expected to pay it in cash, or possibly issue a draft on one of its correspondent banks. But at most it did not send the money to the insurance company, and closed, without ever sending it. Under the circumstances as shown here, could the Home Insurance Company have filed and maintained a claim for a preference? And could the Insurance Company come back on the plaintiff? And if it did come back on the plaintiff and he paid the insurance company as he did in this instance, could he then file and have a preferred claim allowed to him? We think all these questions could and should be answered in the affirmative.

We agree with the contention of the plaintiff that the legal status of a claim is determined by the relationship of the holder to the bank issuing the paper, and that each case must stand upon its own bottom and be governed by the existing facts at the time of issue. No claim against an insolvent bank can be given a preference because it is based upon a certain form of paper issued by the bank, whether the same be a certificate of deposit, cashier's check, draft on correspondent bank, certified check or personal check issued by a depositor. There may be cases where each has been declared a preference, and cases where each has been declared a common claim.

The testimony in this case clearly shows that the relation existing between the bank and the other parties, to-wit, the Insurance Company and the plaintiff, are exactly as those relations would have been, if the plaintiff had been a stranger to the bank and left the funds in the bank for transmission to the insurance company. We may eliminate the former relation between the plaintiff and the bank occasioned by depositing his money in there, for the evidence shows that his deposits have been checked out and that his account had

been charged with this check. The record does not show whether he had other money deposited there or not, and so far as this case is concerned it makes no difference. That bank no longer owed him as a depositor the $256.06, because he had taken it out. He had placed it with the bank in another relation and that relation is as heretofore mentioned. He had augmented the funds held by the bank that much. The relation of debtor and creditor did not exist between the bank and the Insurance Company. The bank held that money, not as its own, but for the insurance company, and the company would have been entitled to a preference had it filed the claim. [Bank of Poplar Bluff v. Millspaugh, 313 Mo. 423, 281 S. W. 733; Farmers Mutual Tornado Ins. Co. v. Cantley, 222 Mo. App. 839, 6 S. W. (2d) 970; Federal Reserve Bank v. Quigley (Mo. App.), 284 S. W. 164; Marshall v. Farmers & Merchants Bank, 215 Mo. App. 365, 253 S. W. 15; Craig v. Bank of Granby, 210 Mo. App. 334, 238 S. W. 507.]

The last two cases above cited refer to special deposits, and in this instance, if the money could be referred to as a deposit after plaintiff gave his check and the amount was charged from his general deposit account, it could be not less than a special deposit. In 3 R. C. L. 522, section 150 we find this about special deposits.

"In the case of a special deposit, the bank assumes merely the charge or custody of property, without authority to use it, and the depositor is entitled to receive back the identical money or thing deposited. In such case, the right of property remains in the depositor, and, if the deposit is of money, the bank may not mingle it with its own funds. The relation created is that of bailor and bailee, and not that of creditor and debtor. Thus, the depositor may always guard against the effect of an insolvency of the institution by making a special deposit; that is, by depositing his money in a bag or box, or by affixing some mark upon it by which it can be distinguished from the general funds of its institution without the consent of the depositor, make themselves personally liable for the same. The depositor may also follow the money into the hands of third persons who received it with a knowledge of his rights, or who have not paid an equivalent therefor in the ordinary course of business."

Our courts have held that even though the money is mingled with the funds of the bank and cannot be identified yet a claim may be had out of the assets of the bank. [Shutz v. Bank of Harrisonville (Mo. App.), 245 S. W. 614.]

We have read the very recent case of Cormany v. Wells-Hine Trust Co. (Mo. App.), 44 S. W. (2d) 172, as well as the cases cited by the defendant in this case, and these cases are based on different

facts to these here, and we think are not authority for us to hold different from our opinion here.

We think the Home Insurance Company had a clear case against the bank for preference, and that since the plaintiff had to take up the claim from the Insurance Company that he had the same right against the bank.

The evidence is sufficient to warrant the judgment of the trial court and we think the judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.