A. H. LANGHORST, EXECUTOR, RESPONDENT, v. BANK OF ROSEBUD AND O. H. MOBERLY, STATE FINANCE COMMISSIONER, APPELLANT.—78 S. W. (2d) 119.

Kansas City Court of Appeals. January 7, 1935.

*Joseph T. Tate* for respondent.

*C. L. Shotwell* for appellant.

SHAIN, P. J.—This is a proceeding seeking to establish a preferred claim for funds deposited in a bank, which is now in the hands of the Commissioner of Finance for liquidation.

It appears that Elizabeth Langhorst, now deceased, did in her lifetime, to-wit, December 18, 1930, deposit in the Rosebud Bank the sum of $1,144 and received therefor a certificate of deposit bearing four per cent interest if left as long as six months. It appears further that on December 18, 1931, she surrendered the aforesaid certificate and made a deposit in the sum of $1,000 on which she received a time certificate of deposit. It further appears that Mrs. Langhorst died on October 1, 1932, and that her son A. H. Langhorst was duly appointed and qualified as the executor under the will of said deceased.

The bank was closed and placed in the hands of the Commissioner of Finance on December 19, 1932.

The executor, respondent herein, in due course filed a petition in the circuit court asking that the sum of $1,154.19, which represented the aforesaid deposit of December 18, 1931, together with accrued interest thereon, be allowed as a preferred claim. The respondent's petition is in two counts. In the first count claim for preference is based upon the theory that the bank was insolvent and known by its officers to be insolvent on December 18, 1931, when the certificate was issued. In the second count the respondent bases claim for preference on the ground that demand for payment was made while the bank was in the hands of its officers doing business and with funds on hand with which to pay and that payment was refused.

Upon hearing of the cause, the trial court rendered judgment for the respondent for preference in the sum of $1,154.19.

From the above judgment, the Commissioner of Finance has appealed.

The appellants' assignment of errors present that there was no evidence to sustain allegations of petition; that decree is against weight of evidence; that there is not sufficient evidence to show that the Commissioner of Finance was a. trustee *ex maleficio;* that the evidence failed to show that funds of the bank passed into the hands of the Commissioner against which a trust could be impressed and that the court erred in, over the objections and exceptions of appellants, defendants below, admitting in evidence a resolution authorizing the cashier of the bank to borrow money.

In support of claims of error, the appellants present under Points and authorities five subheads, as follows:

"I.

"A certificate of deposit is, in legal effect, a promissory note.

"II.

"The giving of the renewal certificate of deposit by defendant to plaintiff and his acceptance of same suspended his right to sue on the original indebtedness.

"III.

"It is necessary that a certificate of deposit be presented and demand be made for the payment thereof in order to constitute the bank a trustee *ex maleficio.*

"IV.

"Under the Statutes of Missouri corporations have the right to adopt reasonable by-laws, rules and regulations for the transaction of their business. In cases of extreme emergency a bank should have the right to limit withdrawals in order to protect its depositors.

"V.

"In order for a depositor to have his claim allowed as preferred on account of the insolvency of a bank he must show the bank was insolvent at the time the deposit was made and the officers thereof knew it was insolvent.

"VI.

"To entitle a claimant against a bank in liquidation for preference in payment he must show that funds of the bank passed into the hands of the Commissioner of Finance in charge of the bank against which a trust could be impressed.

"VII.

"Equitable relief will not be granted in cases where the action of the court would place an unnecessary burden and work an unnecessary hardship on many innocent people through no fault of their own.

356

"VIII.

"Passage of a resolution by the board of directors of the bank authorizing its cashier to borrow money for the bank is no evidence of insolvency, and the court erred in admitting same over the objection and exception of defendants that it did not tend to prove insolvency."

Opinion.

As to appellants' point one, an abstract proposition of law is stated that finds no application to the issues herein for the reason that there is no authority to the effect that a deposit evidenced by a past due certificate of deposit is barred from preference.

As to appellants' point two, the same has no application in that this is not a suit on the original certificate of $1,144 of December 18, 1930, but is alone based upon the certificate of $1,100 of December 18, 1932.

As the respondent bases right of preference on two grounds, it becomes necessary to examine the evidence and apply the law as applies to each of the grounds stated and as the suit is in equity it is within our province to make our own findings as of fact.

The first presentation is that the bank was insolvent and known to be insolvent at the time the deposit was made.

We conclude that for the purposes of this case the question of solvency and knowledge of solvency must be determined as of the date of December 18, 1931.

It stands undisputed that the deposit was duly made with an agent of the bank, who was acting within the scope of his authority. The acceptance of the deposit was the bank's act.

It follows that the knowledge possessed by the accredited agent as to the solvency or insolvency of the bank is the knowledge of the corporation.

It is well settled law that the acceptance of a deposit with knowledge of hopeless insolvency of the bank constitutes the bank a trustee ex maleficio and entitles the depositor to a preference against funds held by the Finance Commissioner. [Ronchetto v. State Bank of Bevier, 51 S. W. (2d) 174.]

Under the phase of the case now under consideration, it must be determined from the evidence as to whether it is shown that the bank was hopelessly insolvent and known to be so on the particular date of December 18, 1931. The burden of proof as to the issue is, of course, upon the claimant, respondent herein.

The testimony of the claimant herein contains nothing that throws light upon the condition of solvency of the bank on December 18, 1931. However, there is embraced in the record the testimony of other depositors and claimants and the claimant herein bases his contention of insolvency upon the evidence of these other parties and especially upon the evidence of one H. H. Morre and one W. E.

Hennemann and upon the evidence of Henry Brinkmann, who was the cashier at the time the deposit in question was made.

It appears that witness Morre had money in the bank evidenced by a certificate of deposit due on or about the latter part of December, 1931. Morre, who was living in Columbia, Missouri, wrote to the cashier of the bank, when his certificate became due, and requested that the amount thereof be placed to his checking account. Mr. Morre received no response to this letter and a second letter was written. To this second request, the cashier on January 14, 1931, wrote Mr. Morre a letter that is shown in the record and is as follows, to-wit:

"Rosebud, Mo., Jan. 14, 1931.

"Mr. H. H. Morre,

"Columbia, Mo.

"Dear Mr. Morre:

"Just received your letter, and don't know just what to say, but as conditions are now, and all the excitement and unrest, we nor other banks are paying any certificates unless they are due, and since the Bank of Gerald closed, which as we understand was done by the people withdrawing their money, the banks here have passed resolutions not to let any money be withdrawn except a small sum a week. We do not let anyone have more than $10.00 a week. We done this for the protection of the bank and the protection of the people that had money deposited. This continual withdrawal has to be stopped or might close all the banks.

"They took these steps in Sedalia and other parts of the state, and when people understand it, think they will all be satisfied, because it is for the protection of the depositors, they know that no one else can get ahead of them and draw his money.

"Under these conditions we could not promise you that you could draw it any time, it might be that in two or three months time everything would have quieted down. We don't know. Heretofore we have paid certificates any time, but we could not promise anything now. So before changing it want to write you, of course as stated above, you could not draw it now either, but as you stated to renew $200.00 and put the balance on checking account, and should you need this $50.00 you could check $10.00 a week on it.

"Thought best to write you first before making the change, however will be glad to renew it for you either the whole amount or for $200.00 and deposit the balance subject to check.

"I had been wondering if you had received by letter as we did not hear from you, as your first letter somehow got misplaced and did not have your address.

"So any time at your leisure you can let me know how you want this handled.

"Our people here, so far seem to be well satisfied with our restric-

tions and think that they will all work with us, as they don't want to see any more banks closed.

"Yours Resp't.

"H. F. BRINKMANN,

"Cashier."

It appears that witness Hennemann in April, 1932, deposited $5100 on time deposit. It appears that this witness had made a time deposit of $5000 in October, 1931, and that the deposit of $5100 of April, 1932, was a re-deposit of the first amount with interest added.

The claimant, respondent herein, urges the testimony of Mr. Hennemann concerning this last deposit as going to the issue of insolvency on December 18, 1931. As to what happened in April, 1932, when the time deposit of October became due, the witness testified as follows:

"Q. Now then, go ahead and tell that conversation. A. I had a time certificate there at that time that was due, $5,000, and I went there and presented my time certificate to Mr. Brinkmann, and demanded my money.

"Q. You mean you went to the bank? A. Yes, sir; I went to the bank.

"Q. Well, go ahead now. A. And presented my time certificate to Mr. Brinkmann, the cashier, and demanded my money.

"Q. Well now, tell what he said, if anything? A. And he refused to pay it to me.

"Q. Well, did he say anything else—tell what he said, Mr. Hennemann, the best you can remember. A. He didn't say very much of anything. He just refused to pay it.

"Q. Well, what did you do then?

"MR. SHORTWELL: That is a conclusion of the witness, and I ask it be stricken out.

"THE COURT: Yes, tell what he said.

"Q. Tell the words, Mr. Hennemann, as best you remember them. A. He refused to pay it, and said it would be hard to do, and he stood there and commenced crying.

"Q. Go ahead and tell the whole thing. A. He didn't say anything more. And I says to him, 'I will tell you what I will do.' I says, 'If you will pay me $900 now'—I had some on a checking account there—'If you will pay me $900 today, and promise to pay me the rest of it in six months, I will renew the $5000.' He says, 'I will do it, I will do it.' And he paid me $900 and renewed the time certificate for $5000 for six months."

As to the Hennemann transaction, Brinkmann, the cashier, testified:

"Q. What did Mr. Hennemann say to you that day in reference to this certificate of deposit that was due? A. I think he asked

whether he could get the money, and I told him, 'Well, the things —the way things were going if everybody would do that, we would have to lock up but if everybody would stay with us, I think we can make it through all right.' ''

It appears that the board of directors of the bank, by resolution of January 11, 1932, placed a restriction on withdrawals to $10 per week.

Mr. Brinkmann testified to the effect that, at the time of the Morre and Hennemann transactions, the bank was suffering from the general prevailing conditions affecting securities at that time and admitted that if all obligations were presented for payment at that time that the bank did not have funds at hand to meet such a demand. It would appear, however, from the testimony that the bank at all such times had sufficient funds on hand with which to meet the claim now in issue.

There is shown in evidence the duly attested bank statement made on December 31, 1931. This statement upon its face indicates the solvency of the bank. However, the claimant herein urges that certain securities listed as assets should be deducted, which if done would present a showing of insolvency.

The record in the case at bar is somewhat voluminous in that by stipulation the evidence taken in the companion case of Hennemann v. Bank, is included and is to be considered on the phase of the case now under consideration, to-wit; the issue of solvency on December 18, 1931.

As the issue of solvency is an important one, we have embraced in our opinion a somewhat complete synopsis of the evidence going to the issue.

On questions of banks and banking, our courts today are being confronted with many novel situations. Conditions have arisen in the past few years that could not have been in the legislative mind when our present banking laws were enacted. Emergencies have arisen wherein those in high authority, acting upon principles of self-protection, have taken steps that have never as yet received legislative sanction. Many banks without sanction, at least of statutory law, have restricted depositors to the use of a mere pittance of the money they had on deposit. If such a course were prescribed by statute, there would naturally follow safeguards holding assets to equal distribution among creditors. For the first time, the writer is confused in the application of the time-honored expression, ''We have no other lamp by which our feet are guarded save the lamp of experience.'' In times past, insolvency has been predicated upon defaults in payment. To do so in the present case, we conclude would be to go beyond the reasons upon which those decisions were predicated.

Apropos of above, to the case at bar, common sense teaches us that

it would be disastrous to hold our banks insolvent on a showing that the banks could not pay depositors in event all depositors made demand at once. It is a matter of common knowledge that a situation arose wherein without restrictions a majority of our banks, even though solvent, must close and many a solvent bank to avoid such a dilemma restricted withdrawals. The above being so, law would cease to be reason should our courts hold that such restrictions concluded as to solvency.

As to the testimony of Morre, Hennemann and Brinkmann, it will be noted that the same revolves principally around incidents in the early part of 1932, after the deposit in issue herein was made. We conclude that there is nothing in this testimony from which we can conclude that the bank was hopelessly insolvent on December 18, 1931.

As to the bank statement in evidence, we have carefully gone over the evidence concerning the securities that the claimant contends are of no value and we find no evidence from which we can conclude that said securities had depreciated to such an extent as to justify us in concluding that the bank was hopelessly insolvent. It follows that our conclusion is to the effect that the claimant has not met the burden of showing that the bank was hopelessly insolvent at the time the deposit in issue was made.

This brings us to the claimant's second contention, to-wit: That at a time when the bank was in the hands of its agents and open and doing business and with funds on hand to pay, it refused to pay when demand was made.

It would appear that the claimant is verging upon a practice of blowing both hot and cold, by in one breath asking preference based upon a preexisting insolvency and in the next breath asking preference based upon demand made upon a going concern at the time demand was made. However, no question of inconsistent pleadings is raised and as there is nothing to show upon which count of the petition the court granted preference, we consider it our duty to determine the issue as presented in the second count.

It will be noted that the deposit of December 18, 1931, presents a renewal certificate as to $1,100. While for the purposes of this case we deal only with the deposit as of December 18, 1931, still it is significant that the certificate as to the $1,100 is vitally different from the first certificate in which to entitle to interest deposit must be left for six months and concludes, "If left six or twelve months no interest after twelve months." On the other hand, the certificate in issue concludes, "If left six months no interest after six months."

In each of these certificates it is shown that the money deposited is due on demand on return of the certificate properly endorsed. In other words, delay of demand for specified time entitled to interest.

The claimant herein bases his demand upon a letter handed to the cashier of the bank, which letter is as follows:

"Nov. 16th, 1932

"Rosebud Bank,
"Rosebud, Mo.
"Gentlemen:

"Referring to certificate of deposit No. 9684 on your bank dated December 18, 1931, in the name of Mrs. Elizabeth Langhorst, now deceased.

"The undersigned was named executor in her will dated July 17th, 1923, for the settlement of her estate, and as there are six parties interested in the division of the estate, I wish to make known the desire to have the above certificate of deposit paid on the day it falls due, namely December 18th, 1932. Also ask that you handle with the proper office at Jefferson City, Mo., pertaining to inheritance tax matters. Thanking you, and oblige,

"Yours truly,
"A. H. LANGHORST."

It is evident that claimant, in fixing his demand for payment at a future date, December 18, 1932, had in contemplation the collection of interest for the full period of one year. The claimant presented his case on the theory that he was entitled to interest and the amount of the judgment shows that the interest is included.

The above facts are important in that the question of such a demand as entitles to preference is involved.

While the fact is not decisive of the issue, it is a fact that preferences usually works a hardship on innocent people. Equity, of course, must follow the law and where the elements that entitle to preference are presented it becomes a matter of right and the hardship on others cannot be avoided. However, equity should not foster unnecessary hardships on the innocent.

It has been universally held in this State, as in Johnson v. Farmers Bank, 223 Mo. App. 513, that where a check is presented for payment and is refused, while the bank is open and functioning and the bank has sufficient money on hand with which to pay the check, then it follows that the bank thereafter holds the amount of the check as trustee and that amount is entitled preference. As to a check, the demand is a present demand for present payment. Further, the amount is a fixed and definite amount. In the case at bar the demand is for future payment. The amount demanded is uncertain in, at least, that computations as to interest are required. The demand is irregular in that the certificate was not presented and properly endorsed as per its express terms.

Herein, we are confronted with the proposition that the law does not require the useless. The bank is shown to have been operating on restricted payment at the time the claimant handed his letter to the cashier. Under such condition, it might as well be said that it would be useless for any depositor to make a present definite

demand for money he had in excess of the restricted amount, in which case all depositors must share alike. Herein, again the lamp of experience flickers and its effulgent light will continue to be dimmed until bank restrictions cease or until they receive full sanction of law with statutory regulations.

The appellants cite Section 4555, Revised Statutes 1929, as statutory justification for restricting payment. "To make by-laws, not inconsistent with existing law, for the management of its property, the regulation of its affairs and for the transfer of stock," we conclude presents no lawful grounds for refusal to meet obligations.

Under point three of appellants' brief, the question of insufficiency of demand is made and while we will not go so far as to say that, requisite of demand, the certificate of deposit must under all circumstances be endorsed and offered to be surrendered in order to create a preference, still we do hold that, with or without the presentation of the endorsed certificate, the demand must be a present demand and for a definite amount.

The certificate in issue was payable on demand, exclusive of interest. By making a demand for payment upon any day the bank was open for business with sufficient funds on hand to pay, would have entitled to preference. However, we conclude that the letter in evidence and the conversation of the claimant with the cashier, all going to the question of payment at a future date with no computation of the amount at said future date and no demand for any fixed amount at either the present or future date, fails to establish a right for preference.

Judgment is reversed. All concur; *Trimble, J.,* in result.