51 P.(2d) 607

JAMESON et al. v. FIRST SAVINGS BANK & TRUST CO. OF ALBU-
QUERQUE et al.

NEW MEXICO CO–OPERATIVE WOOL
MARKETING ASS'N v. POWELL et al.

No. 4047.

Supreme Court of New Mexico.

Oct. 28, 1935.

Rehearing Denied Dec. 5, 1935.

Bryan G. Johnson, of Albuquerque, for appellant.

George C. Taylor, of Albuquerque, for appellees.

BRICE, Justice.

This is a proceeding to establish a preference claim of $14,330.10, and, failing that, then a claim of $9,000 out of the funds of the First Savings Bank & Trust Company of Albuquerque, a New Mexico banking corporation (hereinafter referred to as "the bank"), now in the hands of a receiver. At the close of claimant's (appellant's) testimony, a motion made by defendants (appellees) that such claim be denied was sustained by the court. From a judgment denying the claim, this appeal is prosecuted.

The facts, as we must view them, are substantially as follows: About 11 o'clock a. m. on April 7, 1933, appellant, having a deposit of $16,232.81 in the bank, presented its check for $9,000 drawn against such deposit, and requested the bank to issue it New York exchange for that amount, payable to a third person. The bank refused the request, giving as a reason, that "we are on a restricted basis of five per cent and we can't give you a draft." The bank, in fact, was not placed on a restricted payment basis until the opening of business the next morning, from which time payments were legally restricted to 5 per cent. of deposits; but otherwise the bank continued a normal banking business until it was placed in receivership, July 21, 1933. At the time the attempt was made to purchase exchange, there was on de-

posit with the bank's New York correspondent more than $9,000, and, if appellant had received the draft requested, it would have been paid in due course of business. At the time the check was presented the bank had been hopelessly insolvent, and known to be insolvent by its managing officers, for more than 30 days, and has continued so since. Deposits were made by appellant during the 30 days of known insolvency prior to April 7, 1933, in sums aggregating $15,840.50; and withdrawals during this time were over $11,000. There was not less than $20,000 in cash in the bank at all times from March 1, 1933, until the bank was closed.

Two questions are presented: First, do the facts establish a right to a preference in the cash in possession of the receiver of the bank in the sum of $14,330.10 in favor of appellant? and if not, second, then do they establish such right in the sum of $9,000?

■ 1. With reference to the claim of $14,330.10, it is stated in appellant's brief at page 21: "We cannot bring ourselves within the remedy provided for in the equity cases above referred to because we cannot trace and identify Appellant's deposits among the assets of the bank. Appellant's deposits were so intermingled with other assets of the bank that our equitable remedy was lost although the wrong still exists."

We, of course, accept this as correct. Board of Commissioners of San Miguel County v. People's Bank & Trust Co., 34 N. M. 166, 279 P. 60. While thus admitting its failure to establish a trust, yet appellant claims such a preference by virtue of the provisions of section 13-142, Comp. St. 1929 (being section 41 of chapter 67, Laws of 1915), which reads as follows: "No bank shall receive any deposit when it is insolvent nor shall any officer, director or employee of any bank knowingly permit the receipt of any such deposits. An action may be had to recover any deposits received in violation hereof, and the bank, and all officers, directors and employees thereof knowingly permitting the same, and their personal representatives, may be joined as defendants, and a joint and several judgment be recovered against them."

■ Appellant argues that "unless this statute gives the depositor a preference it is meaningless"; that, as it provides a depositor could "recover any deposits received in violation thereof," necessarily a preference is intended. But how could a deposit be *recovered* from officers and employees who had never received it? And how could it be recovered from the bank that received it unless it could be traced and identified? The act is meaningless unless thereby a cause of action is given the depositor against the bank and its officers and employees who violate it for the recovery of a joint and several judgment for an amount equal to the deposit unlawfully received by the bank. Neither by its terms nor by any reasonable construction can it be said a "preference"

is given a depositor coming within its terms.

2. The only evidence with regard to the $9,000 transaction was given by plaintiff's agent, and is as follows:

"Q. Did you have occasion to go into the First Savings Bank on the morning of April 7th, 1933, for the purpose of obtaining a New York draft in the amount of $9,000.00? A. Yes.

"Q. To whom did you present it? A. Mr. Ira Boldt.

"Q. Will you state what then happened? A. I gave Mr. Boldt the check and asked that he make a draft out to the National Wool Marketing Corporation, a New York draft, and I stepped over to some other window for a few minutes and then I returned and asked Mr. Boldt for the draft and he said 'We are on a restricted basis of five per cent and we can't give you a draft.' * * *

"Q. Did they then return your $9,000.00 check to you? A. Yes.

"Q. And you never did get this $9,000.-00 draft? A. No sir."

The most we can make of this is an offer by appellant to buy New York exchange with a check drawn on the bank against its deposit therein, which offer the bank refused. There was no transaction by which the funds of the bank were augmented from which a trust might follow. But appellant urges that if the bank had sold the exchange the drawee would have paid it, and therefore by reason of the bank's refusal to sell the exchange it has lost the $9,000. True enough, but there is no rule of law that compelled the bank to sell exchange or that makes it responsible in damages for refusing to sell it. Appellant further urges that the occurrence at the bank amounted to the presentation of the check for payment and refusal of payment by the bank, and cites Mallett v. Tunnicliffe, 102 Fla. 809, 136 So. 346, 137 So. 238, 80 A. L. R. 785, to the effect that when one presents a check for payment, drawn against a deposit in a bank open and doing business, and payment is refused by such bank, the relation of debtor and creditor immediately terminates and that of trustee and cestui que trust arises; and insists that under this doctrine it is entitled to a preference. The decisions of the Missouri courts are to the same effect, Johnson v. Farmers' Bank, 223 Mo. App. 513, 11 S.W.(2d) 1090; Claxton v. Cantley, Commissioner of Finance (Mo. App.) 297 S. W. 975; Hiatt v. Miller Bank et al., 224 Mo. App. 1040, 34 S.W.(2d) 532; Fletcher v. Cantley, Commissioner, 226 Mo. App. 1060, 47 S.W.(2d) 217; Koehler v. Joplin State Bank et al. (Mo. App.) 68 S.W.(2d) 728; Householder v. Cantley (Mo. App.) 27 S.W.(2d) 1034; Langhorst v. Rosebud Bank (Mo. App.) 78 S. W.(2d) 119; Farmers' Bank of Deepwater v. Moberly, Commissioner (Mo. App.) 78 S.W.(2d) 906; but under the holding of those cases, the correctness of which need not be considered, the check must be presented for payment in cash, and payment refused, to bring about such

change of relations. Here no demand was made for payment of the check. Had the bank issued and delivered the draft for the check it would have been the exchange of one credit for another, and the relation of debtor and creditor would have continued, even if the draft had been dishonored by the drawee. This is the holding of the Missouri Supreme Court in a like case, Bank of Republic v. Republic State Bank, 328 Mo. 848, 42 S.W.(2d) 27. That no preference arose from the facts of this case, see annotations in 93 A. L. R. 938, and prior annotations on the same question in that series of reports; also Connolly v. Lang (C. C. A.) 68 F.(2d) 199; Leach v. Iowa State Savings Bank et al., 204 Iowa, 497, 212 N. W. 748, 215 N. W. 728; Smith v. Zemurray (C. C. A.) 69 F.(2d) 5. The rule seems to be that, in the absence of fraud, the purchaser of a draft drawn by an insolvent bank, either with cash or check, is not entitled to a preference over general creditors for the amount of such draft if dishonored following the failure of such bank. Surely, then, no trust relation resulted from a mere refusal of an offer to purchase a draft with a check drawn against a deposit in such bank, even if the draft would have been paid if the offer had been accepted. The parties occupy the same relation they would have occupied if the offer had been accepted and the draft dishonored; that of debtor and creditor.

The appellant is not entitled to a preference, and the district court's action in denying it was correct.

The judgment of the district court is affirmed and the cause remanded.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.